Helen CHAPA, Appellant,

v.

UNITED STATES FIRE INSURANCE CO., Appellee.

No. 1946cv.

Court of Appeals of Texas, Corpus Christi.

Sept. 23, 1982.

Rehearing Denied Oct. 21, 1982.

J. Kenneth Dahlberg, Jr., Corpus Christi, for appellant.

William A. Abernethy, Meredith & Donnell, Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

Helen Chapa brought a worker's compensation suit to recover for disability produced from a fall. She alleged that on April 3, 1978, she slipped and fell on a wet floor at Memorial Medical Center where she works as an L.V.N. The case was submitted to the jury on special issues, which were decided adversely to Mrs. Chapa. We affirm. In that the appellant in the ten points of error she has brought forward sets out in some of her points challenges to the legal and factual sufficiency of the evidence, we deem that a resume of the pertinent evidence is in order.

Mrs. Chapa testified that after a year's training, she went to work at Memorial Medical Center as an L.V.N. She has worked there since 1953 and never had any difficulties performing her job until April 3, 1978. On that day she slipped in a puddle of water in the hallway, fell on her right knee and hurt her back and neck. The other nurses on the floor took her to the emergency room, where she was given pain medication. After several days off, she was advised by the emergency room doctor to see her personal physician. Although subsequent X-rays revealed no broken bones, her knee, foot and leg were swollen and painful. Her physician, Dr. Wilk, looked at her knee but not her back, which also hurt. Dr. Wilk administered tests and later performed surgery on her knee. After some physical therapy following surgery, she was able to return to work in October of 1978. From the time of the fall, she was also being treated by Dr. Kennedy for her back problems. He recommended physical therapy for her back and prescribed medication for her pain. She has also seen Dr. Leibfarth for pain in her joints.

The appellant returned to her job in October 1978, after being told by her doctor that it was advisable for her to do light duty nursing. Her supervisor told her that the only work available was the job that

she left. That job involved taking the patients' vital signs, bathing them and assisting them in getting up. She stated that since her fall her legs swell because she is constantly on her feet and her back hurts at work. She continued to take medication for pain and needed to ask her co-workers to assist her in turning patients in bed and running errands. She believes that she has lost 75% of the use of her right knee. Despite these difficulties, according to Mrs. Chapa, she remained on the job because of her need for money. She hoped to be able to work two more years so that she could collect full retirement for which she would be eligible at the age of 55.

On cross examination, it was established that Dr. Wilk and Dr. Kennedy had been paid by U.S. Fire, the hospital's insurance carrier. She paid Dr. Liebfarth's bills. U.S. Fire also paid her $91.00 per week during her absences from work. In addition to several months during 1978 when she was convalescing from the knee operation, Mrs. Chapa also spent half of 1979 away from work.

Mrs. Chapa is 53 years old with a ninth grade education. She never tried to find work elsewhere because she believes that her history of injuries would make her unemployable. She has filed claims for other injuries since April of 1978.

Although she stated that she never had any neck, back or knee problems prior to the accident, Mrs. Chapa admitted that she made an appointment to see Dr. Wilk for pain in her leg before she fell. By the time she saw him, however, she had already fallen.

Two of the three doctors who treated Mrs. Chapa gave testimony. Dr. Charles Kennedy, an orthopedic surgeon, saw her on April 28, 1978. He diagnosed a strain to the neck and back and bruise to the knee. When Dr. Kennedy next saw her, Mrs. Chapa had already undergone a knee operation by Dr. Wilk. Through the summer of 1978, Mrs. Chapa returned to Dr. Kennedy complaining of back problems. He formed the opinion that she had a permanent physical impairment of 5% resulting from a combination of neck and low back problems. He explained that he arrived at the 5% figure by considering the amount of impairment caused by the injury. The doctor observed that her impairment would limit her ability to do certain types of activities such as heavy lifting and turning patients. Therefore, he recommended that she find a job which involved no heavy lifting.

Dr. James Leibfarth is a rheumatologist. He first saw Mrs. Chapa on August 17, 1979. The pain and inflamation in her joints caused him to diagnose rheumatoid arthritis. He stated that inflammation of the joints is not consistent with traumatic injury, but that a fall could have aggravated an arthritic condition if Mrs. Chapa had one at the time. He also testified that it is difficult to determine the onset of arthritis because the disease sometimes begins before symptoms occur. While he refused to speculate what the condition of the right knee would have been if she had not fallen, he observed that the right knee has more degenerative changes than the left, and expects that might be due to the injury. Dr. Liebfarth thought that Dr. Wilk's estimate of 15% functional disability in the right knee sounded reasonable. On cross examination, he made it clear that he did not quarrel with the 15% figure because he is not an orthopedic surgeon and would leave it to Dr. Wilk to form an opinion.

The remaining witnesses offered observations of Mrs. Chapa's ability to do her job at Memorial Medical Center and her chance of finding employment elsewhere. One co-worker testified that Mrs. Chapa now limps and walks more slowly than she used to do. She also stated that the appellant needs help in turning the patients and that she takes frequent breaks. The head nurse on Mrs. Chapa's floor said that it is against hospital policy for a single nurse to lift patients. She knows of other witnesses who work more slowly than Mrs. Chapa, and believed that Mrs. Chapa does her job well. The nursing supervisor concurred in all of these statements. Witnesses from the Texas Employment Commission and the Texas Rehabilitation Commission concluded

that Mrs. Chapa's age, educational background and health problems would make it difficult for her to find a job.

The special issues asked the jury to determine whether Mrs. Chapa suffered an injury to her back and neck. The jurors found that she had, but refused to find that this injury was a producing cause of any total or partial incapacity. The jurors did find that the injury to her right knee resulted in a partial loss of use of the knee. They found that Mrs. Chapa had lost 15% of her ability to function with her right knee and that this loss was permanent. In accordance with this answer, the court determined the amount of compensation owed to Mrs. Chapa and found that she had already received benefits exceeding that amount. Therefore, the court rendered a take nothing judgment.

The appellant discusses her first, second, third and tenth points of error as a group. In the tenth ground, she complains that the trial court erred in overruling her objection to Special Issue No. 1. As submitted to the jurors, Special Issue No. 1 was worded as follows:

"Do you find from a preponderance of the evidence that Helen Chapa received any injury to her back and neck on or about April 3, 1978?"

"Injury" means damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any diseases, infirmity, or condition, previously or subsequently existing, by reason of such damages or harm."

The appellant protested that the court should not limit the jury to a consideration of injuries to the back and neck only but should permit them to find a general injury. She believes that she was entitled to recovery for general injury resulting from a combination of her back and neck problems as well as aggravation of the arthritis. Mrs. Chapa now complains that had the jury been instructed properly, their failure to find that she sustained total or partial general incapacity would be against the great weight and preponderance of the evidence.

She also contends that the court erred in overruling her objection to Dr. Kennedy's testimony regarding percentage of disability because it caused them to refuse to find that she suffered any total or partial general incapacity.

■ Mrs. Chapa did allege a general injury in her petition. She also alleged a specific injury to her right knee. Where there is a specific injury and a concurrent general injury the worker can recover compensation only for the injury which produces the longest period of incapacity or the greatest benefits. *Highlands Underwriters Ins. Co. v. Harris*, 530 S.W.2d 350, 353 (Tex. Civ.App.—Tyler 1975, writ ref'd n.r.e.). The logical application of this rule to the formulation of special issues for a jury is to inquire 1) whether the plaintiff sustained a specific injury to a part of his body and 2) whether there was a general injury to his body other than to the part which allegedly sustained the specific injury. Our examination of the record fails, however, to disclose that the appellant requested in writing a substantially correct issue as required by Rule 279, T.R.C.P. She has, therefore, waived this tenth point of error.

■ In her third point of error, Mrs. Chapa complains about Dr. Kennedy's testimony that she was suffering from a 5% functional disability as a result of her back and neck injuries. By this he meant that she had lost 5% of her ability to perform certain activities, such as lifting patients. The appellant complains that the use of a percentage probably confused the jury in their determination of partial or total incapacity. He cites no authority for this proposition. The questions to be decided by the jury involved the extent of Mrs. Chapa's disability. It seems to us that the use of a percentage, if anything, is less confusing than a general description of her impairment. Also, this was the only figure mentioned in connection with general incapacity. Therefore, it seems unlikely that a jury could be confused. The third point of error is overruled.

Having disposed of the legal questions regarding general incapacity, we turn to points of error one and two which contend that the jury's refusal to find general incapacity is against the great weight and preponderance of the evidence. Our review of these points and others with similar challenges hereinafter discussed, must be guided by those principles established by *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Thus, we shall consider all evidence which tends to show whether the injury deprived Mrs. Chapa of her ability to work.

■ The appellant argues that because there was evidence that it would be very difficult for her to find another job, she has proved she was disabled to the extent that she could not get and keep employment. Thus, she believes that she proved total incapacity. The witnesses who offered evidence of Mrs. Chapa's employment potential made it quite clear that her health was only one factor which would stand in her way. Her age and lack of education figured prominently in their assessments. Also, she admitted that she had made no effort to seek another job. Of course, there was also evidence that she returned to her job at Memorial Medical Center. Therefore, the record supports the jury's failure to find that Mrs. Chapa did become totally incapacitated as a result of her injury.

■ The question of partial incapacity is a bit closer due to testimony by Mrs. Chapa and her co-worker that she was having difficulty performing her job. The major problems were her increased need to take breaks and her inability to lift patients. The number of breaks she needed does not establish that she could not do her work. In fact, there was testimony that others who performed more slowly completed their jobs satisfactorily. Since the hospital did not require any nurse to lift patients single-handedly, her inability to do so does not establish that she could not perform the usual tasks of her work. Therefore, we reject her contention that she proved partial incapacity as a matter of law. Points of error one and two are overruled.

The appellant next complains in points four, five and six of the jury's findings concerning the specific injury to her right knee. She complains that the estimate of 15% loss of use should not have been introduced before the jury because the doctor who formed that opinion did not testify. Consequently, she argues that the jury finding of a 15% loss of use is against the great weight and preponderance of the evidence.

The jury heard the 15% figure when the defense questioned Dr. Leibfarth. It is clear that it was Dr. Wilk who formulated this estimate and that Dr. Leibfarth did not adopt it as his own opinion. Dr. Leibfarth simply indicated that he would not dispute the conclusion of another physician with more expertise in that field. Since Dr. Wilk did not testify, there was no witness who actually told the jury that Mrs. Chapa suffered a 15% loss of use of her right knee. Therefore, this statement was hearsay.

■ The admission of hearsay only requires reversal when it is reasonably calculated to and does cause the jury to render an improper verdict. Rule 434, T.R.C.P. When there is other competent evidence in the record on the same question the admission of incompetent evidence does not constitute reversible error. *Mandril v. Kasishke*, 620 S.W.2d 238, 249 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). We believe that there is ample evidence on this question from several sources. Mrs. Chapa testified that she lost 75% of the use of her right knee. One of her co-workers stated that she walked more slowly and limped. Her ability to walk well enough to go back to work and her performance of the job to the satisfaction of her superiors indicate that the damage was not extensive. Since this evidence exists, the introduction of Dr. Wilk's opinion was not harmful error.

■ In a worker's compensation case, the trier of facts may weigh all the pertinent evidence before it and may blend the evidence to determine the extent and duration of the disability received from an injury. *Texas Employers' Insurance Assoc. v. Stephenson*, 496 S.W.2d 184, 188 (Tex.Civ. App.—Amarillo 1973, no writ). The evi-

dence in this case, as summarized above, encompassed a range of 0–75% loss of use of the right knee. We do not consider the jury's finding of 15% to be against the great weight and preponderance of the evidence. Points four, five and six are overruled.

In her points of error seven and eight, the appellant claims that the jury's answer to Special Issue 19 was against the great weight and preponderance of the evidence. Special Issues 19–21 inquired whether medical care was required as a result of the injury, whether U.S. Fire failed to furnish medical care and the reasonable cost of care which U.S. Fire failed to furnish. The evidence showed that medical care was required and that U.S. Fire paid all the expenses of the doctors who treated her for her knee injury. Dr. Leibfarth, the physician who treated Mrs. Chapa for her arthritis, was not paid by U.S. Fire but by Mrs. Chapa herself. She now contends that she should be reimbursed for Dr. Leibfarth's bills because her injury aggravated the arthritis.

The only evidence regarding the appellant's arthritis was the testimony of Dr. Leibfarth. He could not state whether she had the ailment before her fall and refused to speculate what the condition of her right knee might be if she had not fallen. While he observed that the right knee appeared worse than the left, he never made the unequivocal statement that the April 3, 1978 injury caused an aggravation of the arthritis. In fact, he stated that the inflammation in the right knee was found only after surgery. Since the evidence did not establish that Mrs. Chapa's arthritis was either caused or aggravated by her injury, the jury was justified in refusing to award her the medical expenses arising from its treatment. Points seven and eight are overruled.

Since we have upheld the judgment of the trial court awarding no damages, the ninth point of error, which complains of a refusal to award damages in a lump sum, is overruled.

The judgment of the trial court is AFFIRMED.