**LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Prajedes GARCIA, Appellee.**

**No. 13–87–479–CV.**

Court of Appeals of Texas,
Corpus Christi.

Sept. 15, 1988.

Rehearing Denied Oct. 20, 1988.

Portia J. Bott, Thornton, Summers, Biechlin, Dunham, Corpus Christi, John Milano, Jr., Thornton, Summers, Biechlin, Dunham, San Antonio, for appellant.

Dana Allison Lester, Allison & Sweetman, Brownsville, for appellee.

Before NYE, C.J., and SEERDEN, and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is a worker's compensation case. After a jury trial, appellee, Prajedes Garcia, was awarded compensation for total and permanent incapacity. By two points of error, appellant complains of the court's refusal to submit a requested instruction and definition to the jury, and of the sufficiency of the evidence.

The appellee pleaded that the injuries caused total and permanent incapacity, or in the alternative, temporary total incapacity. The appellant pleaded that appellee's incapacity, if any, was temporary and not permanent, and was partial and not total. The parties stipulated that on March 11, 1986, Garcia worked for Texas Building Systems and accidentally suffered personal injuries while in the course and scope of his employment. It was also stipulated that appellee suffered some incapacity to work as a result of the injuries, that the injuries were the producing cause of appellee's incapacity, and that appellee suffered total incapacity for some period of time as a result of the injuries.

By the first point of error, appellant contends the trial court abused its discretion by refusing to submit to the jury appellant's requested instruction on "partial incapacity" and a corollary definition of earning capacity to accompany special issue one. Special issue one inquired, "Find from a preponderance of the evidence the duration of total incapacity of Prajedes Garcia. Answer 'permanent' or give ending date (month, date, year)." The trial court submitted the definition of total incapacity, but refused to submit the appellant's requested instruction on partial incapacity and the accompanying definition of earning capacity.

Appellant's defensive theory of partial incapacity was an inferential rebuttal issue. *Select Insurance Co. v. Boucher*, 561 S.W. 2d 474, 478-79 (Tex.1978). Tex.R.Civ.P. 277 provides that inferential rebuttal issues are to be submitted to the jury by way of an instruction. The rule requires the trial court to submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict. Generally, the sufficiency of the explanations necessary to that end is largely left to the sound discretion of the trial judge. *McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62, 67 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). The applicable standard of review in this Court is abuse of discretion. *Home Insurance Co. v. Gillum*, 680

S.W.2d 844, 849 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Although appellant would have been entitled to have the requested instruction and definition submitted to the jury since he pleaded the defense and there was some evidence presented in support thereof, the issue here is whether such submissions would be proper in light of the stipulations. *See Archuleta v. International Insurance Co.*, 667 S.W.2d 120, 122 (Tex.1984); *Boucher*, 561 S.W.2d at 478.

The trial court determined that the appellant had waived the right to the submission of the instruction and definition because of the stipulation and admission by appellant that the appellee suffered "total incapacity for some time." We agree.

Partial incapacity is an inferential rebuttal issue to the claim of total incapacity. Where no issue is submitted inquiring whether the injuries caused total incapacity, an instruction on partial incapacity is unnecessary, especially when the only issue is duration of the total incapacity.

Appellant argues that it was not intended that the stipulation limit the issue to the duration of total incapacity. However, stipulations between parties amount to a contract between the parties, and they are subject to judicial interpretation and construction. *Hoffman v. Deck Masters, Inc.*, 662 S.W.2d 438, 441 (Tex.App.—Corpus Christi 1983, no writ). The Court determines the intention of the parties in a trial stipulation from the language used in the entire agreement when viewed in light of the surrounding circumstances. The intent of the parties is determined after consideration of the state of the pleadings, the allegations contained therein, and the trial attitude of the parties in respect to the issues. *Mann v. Fender*, 587 S.W.2d 188, 202 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.).

We agree with the able trial court's interpretation of the stipulation. The actual wording of the stipulation could be construed to mean that only the duration of the total incapacity was at issue. *Texas*

*Employers' Insurance Association v. Fuentes*, 597 S.W.2d 811, 812 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.). For instance, the opening statement of appellant's attorney articulated the defensive theory subsequent to the admissions.

> Now, we admitted that he was disabled as a result of a back sprain that he sustained back here, and we admitted that he was totally disabled for a period of time, but that that disability stopped on this date, and that by May the 20th his back problem had completely cleared up and *he was capable of doing the usual and customary tasks of a worker.*
>
> And that's our case....

This argument is inconsistent with his position on appeal—that he intended to rely on the partial incapacity defense.

Similarly, interrogatories answered by appellant state that appellant contends *incapacity* ended on March 24, 1986. It appears from the appellant's communications that the only issue to be presented at trial was the duration of the total incapacity. The trial court did not abuse its discretion in denying appellant's requested instruction and definition. Appellant's first point of error is overruled.

By the second point of error, appellant contends there was insufficient evidence to support the jury's finding that the total incapacity was permanent, and that on the contrary the evidence established that the total incapacity ended on May 20, 1986, and that beyond that date appellee was only partially incapacited.

■ To uphold a recovery for total and permanent incapacity, the evidence must show that the worker is disabled to such an extent that he cannot get and keep employment. *Commercial Insurance Co. v. Puente*, 535 S.W.2d 948, 952 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding

should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W. 2d 175, 176 (Tex.1986). In considering an "insufficient evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W. 2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960). In *Pool*, the Texas Supreme Court held that an appellate court must "clearly state why the jury's finding is so factually insufficient or is against the great weight and preponderance of the evidence as to be manifestly unjust and why it shocks the conscience." *Pool*, 715 S.W.2d at 635.

■ Appellee testified that since the back injury in March, 1986, he has been unable to bend and stoop because it has been too painful for him. He was fired from his job where he was injured, he was denied employment of two jobs, and he was fired from a job after working as a window cleaner for three days. He has been wearing a back brace for one year and three months. His back is so painful that his wife sometimes has to help him get out of bed, put on his clothes, and go to the bathroom. He has been seeing a chiropractor, but his back has not improved. He said he cannot sit for long periods of time.

Dr. Vargas testified that he examined appellee three times. On the first visit, March 20, 1986, he diagnosed appellee as having a sprain of the lumbosacral spine. On the last visit, May 1, 1986, Dr. Vargas put plaintiff on temporary total disability for two weeks, to return to work with no restrictions after that, and to return for an appointment in six weeks. Dr. Vargas did not see appellant after May 1, 1986, because appellant did not show up for the appointment. Dr. Vargas testified that because of the progress the plaintiff had made up to May 1, 1986, he felt that within two weeks plaintiff would be able to go to work. He explained that the idea was for plaintiff to go back and try to work, that based on how the patient would respond, he would determine whether to send the patient back to full work with no restrictions or to continue with some temporary disability. He said that he could not comment further because he had not seen the patient beyond May 1, 1986. He said, however, if the patient's pain were to continue, he would follow up with other tests, and treatment would be based on the results of those tests.

Dr. Kuri said he examined plaintiff on May 20, 1986, and diagnosed him as having a "mild sprain of the back which was already in resolution." He advised plaintiff to return to work. It was his opinion that on May 20, 1986, plaintiff could work and was able to perform the usual and customary tasks of a worker on that day. He found no neurological problems with the plaintiff. He said that an acute back sprain, with swelling and spasms, could limit the ability of a person to bend or stoop or sit for a long time. He said that if the pain persisted, other tests were available to detect problems that could not be detected with the X-ray exam.

Dr. Yee examined him one time on February 20, 1987, and found no ruptured disks or pinched nerve. He said during the examination appellee was able to bend over and touch his toes and squat without any problems. After the exam, a magnetic resident scan was performed on appellee to see if appellee suffered ruptured disks or pinched nerves. It showed that a disk between the fifth lumbar vertebrae and first sacral vertebrae was slightly degenerated and slightly flat, and that a disk had bulged out a little bit but it did not press the nerves that came out from the side.

He said this injury was probably related to an accident in 1981. He said a back sprain of the type he found in plaintiff would present no limitation for someone who does sedentary work, but there would be possible limitations where a person has to do heavy labor activities, such as pulling or lifting heavy things that may aggravate the pain or sprain. He recommended pain killers, a muscle relaxant, and advised plaintiff to continue to see Dr. Moyer and to not do any heavy work where he would be lifting or pulling objects. He said that the bulging would imply that there was some weakening in the back region. He said that the MRI was performed July 6, 1987, and although he looked at the results, he had not performed any physical examination of appellee since February 20, 1987. He said that he could not make any recommendations of treatments for plaintiff because he has not seen him since February 2. He said a back sprain without a bulging disk would normally heal and the person would be able to do reasonable and customary tasks or work without any medical limitations.

Dr. Moyer has been seeing the patient since May 22, 1986, a total of 126 times. He diagnosed the appellee as having subluxation of lumbosacral spine, a bulging disk, muscle spasms, degenerations, and arthritic changing. He said the injury was permanent, that plaintiff would not get any better, and there was more than a 50 per cent probability he would have more arthritic change and get worse. He said that the injuries were caused by the accident in March 1986, or were at least aggravated by the accident. He said plaintiff would not pass a physical exam for any type of activity requiring physical labor, lifting, stooping, squatting, bending, physical straining. He might be able to do more sedentary type work.

The jury's determination of the extent and duration of incapacity may be based upon circumstantial evidence even though the evidence is from lay witnesses and is contradicted by the testimony of medical experts. *State Highway Department v. Maris*, 532 S.W.2d 690, 693 (Tex.Civ.App.—Texarkana 1976, no writ); *Texas Employers' Insurance v. Fisher*, 667 S.W.2d 589, 592 (Tex.App.—Beaumont 1984, no writ). In a worker's compensation case, the trier of facts should weigh all the pertinent evidence before it and may combine the evidence to determine the extent and duration of the disability received from an injury. *Chapa v. United States Fire Insurance Co.*, 644 S.W.2d 823, 827 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

Having reviewed the entire record, both the evidence favorable and unfavorable to appellant's position, we find the evidence is factually sufficient to support the jury's findings that plaintiff's total incapacity was permanent.

The judgment of the trial court is AFFIRMED.

SEERDEN, Justice, dissenting.

I respectfully dissent. The majority's holding that the appellant had waived his right to the submission of instructions and definitions concerning partial incapacity and diminished wage earning capacity by stipulating that the claimant had been injured and suffered some total disability is contrary to the general principles of waiver and could have a chilling effect on the worthy goal of having parties stipulate to undisputed facts and litigate only those matters which are genuinely in dispute. Appellant plead, as an alternative defensive theory, that any disability which may have extended beyond May 20, was partial and not total. There was evidence submitted which would justify an affirmative finding to these conditions.

The majority concedes that the requested instructions would be proper and should have been submitted except for the waiver. The conduct of appellant in this case was not sufficient to show a waiver of the defensive theory that any disability which existed after the period of total disability to which the stipulation applied was partial

and not total. Tex.R.Civ.P. 277 gives the trial court discretion as to the nature of the explanatory instructions to include in the charge. Whether the refusal to include the instructions in this case amounted to an abuse of discretion sufficient to require a remand for a new trial should be addressed by this Court. *See Home Insurance Co. v. Gillum,* 680 S.W.2d 844, 849 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.).

For the reasons stated, I dissent from the majority's holding in this case.