John DOWNEN, Appellant,

v.

TEXAS GULF SHRIMP COMPANY and
the M/V "ARSCO 8", Appellees.

No. 13–91–593–CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 7, 1993.

Rehearing Overruled Feb. 11, 1993.

Richard L. Eddington, Corpus Christi, for appellant.

G. Don Schauer, Pipiton, Schauer & Simank, Corpus Christi, for appellees.

Before SEERDEN, KENNEDY, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Justice.

This is a case for personal injuries brought by John Downen, appellant, against Texas Gulf Shrimp Company and the M/V *ARSCO 8*, appellees. Downen alleged, pursuant to the Jones Act and general maritime law, that appellees were negligent and, alternatively, that the shrimping vessel, *ARSCO 8*, was unseaworthy. The jury failed to find appellees negligent and failed to find that the vessel was unseaworthy. The trial court entered a take-nothing judgment based upon the jury's findings. Downen raises five points of error for our review complaining about the sufficiency of the evidence to sustain the judgment and that the trial court improperly admitted evidence which probably resulted in an improper judgment. We affirm the trial court's judgment.

Downen was employed as a seaman aboard Texas Gulf Shrimp's vessel the *ARSCO 8*. The vessel ran aground at night in a heavy fog as it was making its way back to port. After the vessel ran aground, Downen allegedly was injured when a wave came over the side of the vessel and threw

him against some railing as he was attempting to bring in the outriggers.

Downen's contention on appeal is that it was impossible for the *ARSCO 8* to run aground in the absence of *both* negligence and unseaworthiness. Downen asserts that either negligence or unseaworthiness caused the ship to run aground, an event without which he would not have sustained injuries. By his first three points of error, Downen challenges the legal and factual sufficiency of the evidence supporting the jury's verdict. By point one, Downen contends that no evidence exists or, alternatively, that the evidence is factually insufficient to support the jury's finding that negligence was not a producing cause of his damages. By point two, Downen contends that there is no evidence or, alternatively, that the evidence is factually insufficient to support the jury's finding that the vessel was not unseaworthy.

Downen begins his argument addressing the sufficiency of the evidence by directing our attention to *Bunge Corp. v. M/V Furness Bridge*, in which the court noted that it is well established that there is a presumption of fault against a moving vessel that strikes a stationary object, such as a dock or navigational aid. *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 794 (5th Cir.1977). Texas Gulf Shrimp responds that the application of such presumption is inapplicable in this case because Downen failed to assert the presumption before the trial court. Texas Gulf Shrimp contends that Downen failed to object to either the instructions given the jury addressing the burden of proof or the jury questions addressing liability, and thus, he cannot complain about the lack of a presumption on appeal.

We note Downen's rebuttal during oral argument before us. During that portion of his argument, he 1) conceded that the jury questions were properly asked, but that he probably should have asked for an instruction about the presumption, 2) asserted that the burden of proof on the case was properly his, and 3) explained that he was not asserting by his appeal that the

trial court erred in not giving him an instruction about a presumption.

■ In reviewing the record, we agree with Texas Gulf Shrimp that Downen did not object to either the instructions given the jury addressing the burden of proof or the court's questions to the jury addressing liability. When a party does not submit to the trial court requested definitions and instructions in substantially correct form, the party waives error. *National Fire Ins. Co. v. Valero Energy Corp.*, 777 S.W.2d 501, 507–08 (Tex.App.—Corpus Christi 1989, writ denied); Tex.R.Civ.P. 274. Sometimes a request is not sufficient and may not even be appropriate; instead counsel must object. *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240–41 (Tex.1992) (on motion for rehearing). The objection must be specific enough to call the court's attention to the asserted error in the charge. *Id.*

■ At oral argument, Downen explained that his complaint is that there is no evidence or, alternatively, that the evidence is factually insufficient to support *both* findings by the jury; that a vessel's running aground had to be caused by either negligence or the vessel's unseaworthiness. Thus, we proceed to address Downen's sufficiency challenges.

■ When we review a point of error complaining that a jury finding is against the great weight and preponderance of the evidence, we examine the record to determine if there is some evidence to support the finding and, if so, then determine whether the finding was either so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust or that the great preponderance of the evidence supports its nonexistence. *Reviea v. Marine Drilling Co.*, 800 S.W.2d 252, 254 (Tex.App.—Corpus Christi 1990, writ denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973)). Since only the trier of fact determines the credibility of witnesses and the weight, if any, to give their testimony, and since only the trier of

fact resolves conflicts in the evidence, we may not disregard a finding, make a contrary finding, nor substitute our opinion for that of the trier of fact merely because we might have reached a different determination based upon the same evidence. *See Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex.1989). This standard of review not only applies to a jury's affirmative finding but also to a jury's failure to find a fact. *Reviea*, 800 S.W.2d at 254 (citing *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988)). Thus, we may not reverse a jury's failure to find a fact simply because we conclude that the evidence would preponderate toward an affirmative jury finding. *Reviea*, 800 S.W.2d at 254 (citing *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988)). We may reverse a jury's negative answer to a question only if the great weight of the evidence would dictate an affirmative finding. *Id.*

■ Under the Jones Act, a seaman may bring a negligence action against his employer. *See* 46 U.S.C.App. 688 (1982); *Reviea*, 800 S.W.2d at 254. Recovery is allowed once the seaman establishes that he has been injured as the result of his employer's negligence. *Id.* The Jones Act places a high standard of care upon the employer; thus, the seaman has only to prove the employer's slight negligence. *Id.* Though the jury in the case before us was instructed about the Jones Act and the elements Downen was required to prove, "negligence" was defined in the court's charge as the failure to use reasonable care. The instruction continued by defin-

ing "reasonable care" as that degree of care which a reasonably careful person would use under like circumstances. Therefore, the Jones Act's high standard of care, requiring a showing of the employer's failure to exercise *great* care, was not submitted to the jury. *See Id.* at 254, n. 3.

■ Downen, on appeal, is complaining about the jury's failure to find slight negligence on the part of Gulf Shrimp. No objection was raised in this regard before the trial court, and thus, on appeal, Downen has waived his right to recover for any slight negligence. *See* Tex.R.App.P. 52(a); Tex.R.Civ.P. 274, 279.

■ A vessel owner must provide seamen with a "seaworthy" vessel upon which to work. *Reviea*, 800 S.W.2d at 255. Seaworthiness within the context of personal injury litigation refers to a vessel owner's nondelegable duty to provide a ship which is reasonably fit for its intended use. *Id.* If an owner does not provide a seaworthy vessel, then no amount of due care or prudence excuses him, whether he knew or could have known of the deficiency. Negligence is not required for a seaman to recover on an unseaworthiness claim because the claim is not based upon fault. *Id.* The jury was given the standard maritime instruction on "unseaworthiness."[1] There were no objections raised nor were there any requests for additional instructions.

■ In the case before us, Downen alleged that the Captain acted negligently, and that if the equipment had been working properly and monitored properly by the Captain, the vessel should never have run aground. The jury was asked by broadly

---

1. The court's instruction addressing Downen's claim of unseaworthiness was as follows:

 A claim of "unseaworthiness" is a claim that the owner of a vessel has not fulfilled his duty to members of the crew to provide a vessel reasonably fit for its intended purpose. The duty to provide a seaworthy ship extends not only to the vessel itself but to all of its parts, equipment, and gear and also includes the responsibility of assigning an adequate crew.

 The owner's duty under the law to provide a seaworthy ship is absolute. The owner may not delegate the duty to anyone. If he does not provide a seaworthy vessel, then no

amount of due care or prudence excuses him, whether he knew or could have known of the deficiency.

 The owner of a vessel is not required, however, to furnish an accident-free ship. A vessel is not called on to have the best of appliances and equipment or the finest of crews but only such gear as is reasonably proper and suitable for its intended use and a crew that is reasonably competent and adequate.

 To recover under a claim of unseaworthiness, a Plaintiff must establish that the breach of duty that rendered the vessel unseaworthy was the "proximate cause" of his injury.

formed question two, "do you find that the Defendant, Texas Gulf Shrimp Co., was negligent on the occasion in question, which negligence was a legal cause of Plaintiff's injuries, if any." The jury answered "no." Additionally, the jury was asked by broadly formed question three, "do you find that the ARSCO 8 was unseaworthy on the occasion in question, which unseaworthiness was a proximate cause of the Plaintiff's injuries, if any." The jury answered "no."

The evidence at trial showed that the ARSCO 8 lost its anchor, the weather was extremely foggy, and Captain Buchanan decided to return to port. Richard Ellis, the owner of Gulf Shrimp, was asked if, in his opinion, it would be negligent for someone to run a vessel in the fog. He answered that when the anchor line was cut and the boat was adrift, that the Captain would have no option but to return the vessel to port. Captain Buchanan was responsible for the decisions on the vessel while at sea, and it was his decision to attempt to bring the vessel back to port in the fog. Ellis explained that while in the fog, the vessel should be run as slowly as possible and that it would be negligent to run it much higher than an idle. Ellis was asked about a vessel's unseaworthiness. He stated that a boat that can make it out and back safely is seaworthy. In his opinion, a seaworthy vessel could operate without a radar, depth finder, or LORAN. The lack of these equipment items would not render a vessel unseaworthy in Ellis' opinion.

Excerpts of Captain Buchanan's deposition were entered at trial. By deposition, Buchanan explained how the ARSCO 8 ran aground. He explained that as they ran offshore he began having problems with one of the two LORANS. He stated that it was very foggy and that the radar did not work. He dropped the anchor and tried to fix the equipment but "it just would not work." When he went to pick up the anchor, it was dragged into a pipeline or some type of bottom obstruction resulting in his losing the anchor. Since he had lost the ability to "anchor up," the vessel was adrift. He explained that the weather was

rough and he "was tired of fighting all the problems on the boat," so he decided he would be able to bring the vessel safely into port. The ARSCO 8 then ran aground. Buchanan explained that he did not see Downen get injured.

Downen testified at trial and was asked if, in his opinion, Captain Buchanan did anything wrong and if the Captain had caused Downen's injuries in any way. He responded that he did not think so. At trial, Downen explained that after the anchor line broke, the Captain started idling the vessel back to shore. Downen explained that the "[Captain] was idling in, fairly slow. It was foggy, so we didn't take no chances." Downen knew that one of the LORANS was broken but he thought that the other one was working. Downen stated that he did not think that the radar nor the depth finder worked. Downen was asleep when the vessel ran aground. He learned that they had run aground when the Captain woke him. Downen went to the wheel house and asked the Captain if he wanted him to do anything. Downen explained that the weather was very rough and the vessel was being slammed around. As Downen was "sliding this rig in, sea comes over the back deck, [and] slams me up against the door racks." Downen explained that he was hurt when "[his] back hit the two-by-sixes that the doors set on, and [his] arm hit the pin rail above the door racks, above the planks." Downen continued to work, sliding the rigging in to the side of the boat. "That was as much as we needed to do right then. That's to keep from losing the outriggers, possibly capsizing the boat." The crew worked for twelve to fourteen hours trying to get off the sand bar. Finally, a small boat pulled them off the sand bar and they ran to the dock. Downen waited to see if he was just badly bruised or if he need to go to a doctor. About a week after the accident, Downen went to talk to Ellis to tell him he had been hurt on the ARSCO 8.

Regarding Downen's unseaworthiness claim, we note that in his brief to this court he presents several federal cases and suggests that they stand for the proposition

that inoperable navigational equipment renders a vessel unseaworthy. As authority, Downen relies upon *Complaint of Armatur, S.A.,* 710 F.Supp. 390, 398 (D.P.R. 1988); *Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652 (1st Cir.1980); *Waterman Steamship Corp. v. Gay Cottons (The Chickasaw),* 414 F.2d 724 (9th Cir.1969); *Matter of Texaco, Inc.,* 570 F.Supp. 1272 (E.D.L.A.1983). Appellee points out that in these cases, the trier of fact was asked to determine whether the inoperable equipment rendered the vessel unseaworthy. In distinguishing Downen's cases from the case before us, we note that the jury was not asked to make such a specific finding of whether the inoperable navigational equipment rendered the vessel unseaworthy. Rather, here, the jury was asked by a proper broad form question whether the vessel was unseaworthy.

The jury determines the credibility of the witnesses and weighs the evidence. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962); *Balandran v. Furr's, Inc.,* 833 S.W.2d 648, 652 (Tex.App.—El Paso 1992, no writ). One party does not have to negate by affirmative evidence the evidence presented by the other side; the jury may simply disbelieve the evidence. *McInnes v. Yamaha Motor Corp., U.S.A.,* 659 S.W.2d 704, 708 (Tex.App.—Corpus Christi 1983), *aff'd,* 673 S.W.2d 185 (Tex.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985).

We cannot determine from the answers to the issues submitted whether the jury felt that Gulf Shrimp was negligent or not, whether its negligence was not a cause of Downen's injuries, or whether Downen simply failed to meet his burden of proof. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Dealers Elec. Supply v. Pierce,* 824 S.W.2d 294, 294 (Tex.App.—Waco 1992, writ denied). Nor can we determine whether the vessel was seaworthy

or unseaworthy, or, if unseaworthy, such condition was not a cause of Downen's injuries, or whether Downen simply failed to meet the required burden of proof. In addition, causation is a question for the trier of fact when general experience and common sense enables a layman to determine the causal relationship between events and conditions. *Pierce,* 824 S.W.2d at 295. We conclude that in this case, causation was a question for the jury.

Both sides posit that this was a heavily contested case and that conflicting evidence exists on each issue. Though the evidence was conflicting at times, after weighing and considering all the evidence, we find that there is sufficient evidence to support the jury's findings in favor of Gulf Shrimp. We do not find the jury's answers to questions two and three to be so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. We overrule points one and two.

By point three, Downen continues to argue that the accident must have been caused by the vessel's unseaworthiness or Gulf Shrimp's negligence because there was no evidence to support a jury verdict reflecting that the vessel's grounding was an unavoidable accident. We disagree with Downen's contention.

The use of mandated broad form questions does not allow this court to adopt Downen's contention. We note that the court included in its charge the definition of "unavoidable accident."[2]

Trial courts have considerable discretion in submitting explanatory instructions and definitions. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974); *Wisenbarger v. Gonzales Warm Springs Rehabilitation Hosp.,* 789 S.W.2d 688, 692 (Tex.App.—Corpus Christi 1990, writ denied). The proper function of an instruc-

---

**2.** The court defined "proximate cause" as,

a cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have

foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause.

The court then set out that an occurrence may be an "unavoidable accident," that is, an event not proximately caused by the negligence of any party to it.

tion is to explain any legal or technical terms to the jury. *Lumbermens Mut. Casualty Ins. Co. v. Garcia,* 758 S.W.2d 893, 895 (Tex.App.—Corpus Christi 1988, writ denied). An instruction is proper if it finds some support in the evidence and the inferences from it, and if it might be of some aid or assistance to the jury in answering the issues submitted. *Hukill v. H.E.B. Food Stores, Inc.,* 756 S.W.2d 840, 843 (Tex.App.—Corpus Christi 1988, no writ).

■■■ Unavoidable accident may be submitted as a definition or instruction in the court's charge when there is a possible causal effect of some physical condition or circumstance, or when one of the parties to the event is incapable of negligence. *Lemos v. Montez,* 680 S.W.2d 798, 800 (Tex. 1984); *Wisenbarger,* 789 S.W.2d at 692–93. We note that again Downen did not object to the submission of the instruction on "unavoidable accident."

We decline to adopt Downen's conclusion that because the jury failed to find the *ARSCO 8* unseaworthy and failed to find Gulf Shrimp negligent that the jury necessarily found that the event was an unavoidable accident. As previously discussed, with the use of proper broad form questions we are unable to determine what the jury thought was the cause of Downen's injuries. The results of the jury's answers were that Texas Gulf Shrimp was not liable for negligence, that the *ARSCO 8* was not liable as being unseaworthy, and that Downen was not negligent. We overrule point three.

By points of error four and five, Downen complains that the trial court erred by admitting into evidence portions of a transcribed oral statement Captain Buchanan made prior to his deposition which probably resulted in the rendition of an improper judgment. By point four, Downen asserts that the admission of portions of Captain Buchanan's oral statement as impeachment evidence was erroneous.

■■■ To obtain a reversal of a judgment based upon trial court error in the admission or *exclusion of evidence,* the following must be shown: 1) that the trial court in fact committed error; and 2) that the error

was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mutual Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); Tex.R.App.P. 81(b)(1). Generally, reversible error does not exist for erroneous rulings when the evidence in question is cumulative and not controlling on a material issue dispositive of the case. *Id.* Thus, we must determine whether the judgment was controlled by testimony that should have been excluded. *Id.*

■■■ In order to impeach a witness with a prior statement, a proper foundation must be established. A proper foundation includes establishing where, when, and to whom the statement was made. Additionally, the party seeking to impeach the witness must allow the witness to admit or deny making the prior statement. *Garcia v. Sky Climber, Inc.,* 470 S.W.2d 261, 266 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). If, upon cross-examination, the witness admits unequivocally having made the statement the impeachment is complete and the prior statement is not admissible. Tex.R.Civ.Evid. 613(a).

■■■ At trial, Gulf Shrimp sought to impeach Captain Buchanan's deposition testimony with a prior inconsistent statement. In deposition testimony, Buchanan stated that the reason he decided to return to port was because of all the problems he was having with the boat. It was this testimony that Gulf Shrimp wanted to impeach. Downen insisted both at trial and on appeal that admitting portions of the prior statement would be improper because there was no showing that Captain Buchanan at his deposition had been confronted with the statement and given an opportunity to explain any inconsistencies. The record reflects a lengthy bench discussion outside the jury's presence addressing whether to allow portions of Captain Buchanan's prior statement for impeachment purposes. Ultimately, the trial court allowed portions of Buchanan's prior statement into evidence and gave the jury a limiting instruction that they could only consider the testimony for impeachment purposes.

At trial, Gulf Shrimp directed the court's and jury's attention to portions of Buchanan's deposition testimony in which Buchanan was questioned about making a prior statement. From our reading of the record, during Buchanan's deposition, he was handed a copy of a statement and asked to determine if it was a correct transcribed copy of his prior statement. He responded that it was a correct copy of a statement he made April 4, 1990, to Harry Green. In the deposition testimony, Buchanan was asked about his prior statement to Green that the reason for heading into port was because Downen had cut the anchor line and because he did not want Downen on the boat anymore but rather wanted to get another rigman to replace Downen. Buchanan responded that he might have said these were the reasons for returning to port but that he did not remember.

We conclude that Buchanan did not unequivocally admit making the prior statements. Thus, the portions of the prior statement concerning his reasons for returning to port were properly admitted as impeachment evidence since Buchanan did not unequivocally admit to the portions of the prior statement but, rather, attempted to explain them or could not remember making the statements for impeachment purposes. We find no error in admitting the prior statements about his reasons for returning to port. We overrule point four.

By point five, Downen asserts that the admission of portions of Captain Buchanan's transcribed oral statement made prior to his deposition regarding Downen's alcohol use were more prejudicial than probative and were reasonably calculated to cause and probably did cause an improper judgment.

Buchanan stated prior to his deposition that he believed that Downen was drunk. Downen contends that the evidence of drinking was not relevant to the issue of why and how the Captain ran aground and there was a great danger of unfair prejudice to Downen. In reviewing the evidence and jury findings, we note that the jury determined that Downen was not contributorily negligent in causing his injuries.

Thus, we conclude that Downen suffered no harm from the admission of Buchanan's transcribed oral statement relating to Downen's alcohol use. Tex.R.App.P. 81(b)(1). We overrule point five.

After addressing all of Downen's points of error, we affirm the trial court's judgment.