Della Rose Felderhoff VOTH, Individually, Henry Voth, Jr., Individually, Della Rose Felderhoff and Henry Voth, Jr., Trustees, Mary Ann Voth Friddell, Sharon Rose Voth, Ernest Voth, Glen Joseph Voth, Marie Felderhoff, Marie Felderhoff Spaeth, Henry Spaeth, David Henry Spaeth, Lou Ann Spaeth, Patricia Ann Spaeth Henry, Eddy Henry, Louise Felderhoff Knauf, Edward W. Knauf, James Donald Knauf, Robert John Knauf, Michele Knauf, Mary J. Knauf Wilkes, and William E. Wilkes, Appellants,

v.

Norbert J. FELDERHOFF, August J. Felderhoff, and Thomas H. Felderhoff, Appellees.

No. 2–87–047–CV.

Court of Appeals of Texas, Fort Worth.

March 16, 1989.

Rehearing Denied May 10, 1989.

R. Jack Ayres, Jr., Law Offices of R. Jack Ayres, Jr., Dallas, for appellants.

Richard H. Kelsey, Denton, for appellees.

Before FARRIS, KELTNER and MEYERS, JJ.

## OPINION

KELTNER, Justice.

This is a declaratory judgment action wherein all parties assert ownership interests in, and seek partition of, three tracts of rural real property.

We reverse the trial court's judgment and render judgment that appellees take nothing by their counterclaim.

On August 25, 1980, the first eight appellants listed above filed suit, either individually or in their capacities as trustees, against: the other appellants; numerous other parties;[1] and the three appellees. Plaintiffs sought a declaration of the parties' proportionate ownership interests in, and division of, nine tracts of real estate, and alleged that because said properties cannot equitably be partitioned in kind, the

---

**1.** These other parties were not named in appellees' counterclaim, discussed *infra,* or in the trial court's judgment. Accordingly, they are not parties to this appeal.

property should be sold and the proceeds divided between the parties according to their proportionate shares.[2]

On June 19, 1981, after a hearing pursuant to TEX.R.CIV.P. 760, the court signed a "Preliminary Decree of Partition and Appointment of Commissioners." In this document, the trial court found that the parties "are the co-owners of, and are by law entitled to partition and division" of all nine tracts of real property which the original plaintiffs sought to partition. In this preliminary decree, the court specified the fractional share owned by each party in each of these nine tracts of land, and held that all of the properties "are susceptible of being partitioned in kind." Additionally, the trial court appointed three commissioners to make a fair, equal, just, and impartial partition of the lands according to the ownership interests set out in the preliminary decree. See TEX.R.CIV.P. 761. When such partition was completed, the commissioners were ordered to report same in writing to the trial court on August 25, 1981. See TEX.R.CIV.P. 769. The appellate record is unclear as to whether a written report was filed by the commissioners.

Plaintiffs filed their first amended original petition on September 6, 1983. They sought a determination of ownership interests and partition of the same nine tracts of land specified in their original pleadings, and of seven additional tracts of real estate claimed to be owned in part by them.

On September 12, 1983, another hearing was held and the court entered a "Second Preliminary Decree of Partition and Appointment of Commissioners." In this document, the trial court found that in addition to the parties being co-owners of the nine properties listed in the June 19, 1981 preliminary decree, they are co-owners of the seven tracts listed in plaintiffs' first amended original petition. The court specified the fractional share each party owned in the seven additional tracts, and held the parties are entitled to partition and division of the seven tracts. Commissioners were again appointed to partition these tracts, and were ordered to report to the court on October 15, 1983.

Neither preliminary decree was limited to a division of merely the surface or the mineral rights in any of the sixteen tracts.

Over two years later, on September 23, 1985, plaintiffs filed their third amended original petition. The only change between this and the first amended petition (the second amended petition is not in the appellate record) appears to be the inclusion of a statement that plaintiffs seek a determination of the parties' ownership interests in, and the partition of, the *surface* estate. The next activity in the case occurred on April 2, 1986 when appellees filed a "counterclaim" against all of the plaintiffs, and many of their co-defendants. This counterclaim concerned the three tracts of land the subject of this appeal: those commonly known as "Rivoire Ranch," "Biffle Place," and "Holland Place" (also known as "Jones Place" and the "Place Where Louise Lives"). The issue of the parties' ownership interests in the "Rivoire Ranch" and "Biffle Place" tracts had previously been addressed in the trial court's June 19, 1981 preliminary decree of partition. The court's second preliminary decree of partition, dated September 12, 1983, addressed the parties' ownership interests in the "Holland Place" tract.

In their counterclaim, appellees sought a declaration that a purchase money resulting trust existed in their favor with regard to a one-half undivided interest in the three tracts in question.[3] Specifically, appellees contended that they or their father, Hubert Felderhoff, had used appellees' funds to purchase a one-half undivided interest in

---

2. In keeping with the terminology used in the trial court, we will use the term "tract" to refer to each of the disputed parcels of land, regardless of how many "tracts" actually comprise the parcel.

3. In its two preliminary decrees, the trial court determined that appellees held the following ownership interests in all three tracts under discussion:

| | |
|---|---|
| Thomas H. Felderhoff: | 0% |
| Norbert J. Felderhoff and wife: | 4/144th |
| August J. Felderhoff and wife: | 8/144th. |

the tracts, and that title was taken in their father's name merely as a matter of convenience. (Hubert died in 1981. It was stipulated at trial that the three deeds whereby Hubert Felderhoff acquired title to the three disputed tracts were the common sources of title for all of the litigants in this case.) Accordingly, appellees asserted Hubert held fifty percent of each of the three tracts in resulting trusts for appellees. Appellees also claimed that a de facto partition had already been effected on the Holland Place property. Alternatively, appellees: asserted a trespass to try title action pertaining to all three tracts, claiming ownership by adverse possession pursuant to the five-year, ten-year, and twenty-five-year statutes of limitations; alleged the existence of a constructive trust over their one-half interest in all three tracts; and maintained that they had acquired an equitable interest in the three tracts because their father had orally conveyed to them their interests in the land.

A jury trial on appellees' counterclaim was held in October of 1986.[4] The jury answered thirty-five special issues,[5] and in summary found in appellees' favor as follows: appellees intended to and did use their own funds to purchase a fifty percent share of all three tracts (thereby creating purchase money resulting trusts); the deeds to these tracts were given to Hubert with whom appellees shared a position of mutual trust and confidence regarding such transactions, and Hubert, acting in fairness, equity, and good conscience should have conveyed a fifty percent share of each of these tracts to the appellees pursuant to their relationship, but he failed to execute any such deeds (thereby establishing appellees' entitlement to constructive trusts). Additionally, the jury found that Hubert made a valid verbal conveyance to appellees of an undivided one-half interest in all three tracts. The jury's answers to the special issues also established

that a de facto partition had already been effected regarding the Holland Place property.

The jury further found that appellants, through their acts, representations, or concealment, are barred from asserting the statute of limitations' defense against appellees' claims regarding the three tracts of property. The jury also found against appellants on their theories of: repudiation by Hubert of the purchase money resulting trusts; release or relinquishment by appellees of their right to assert a counterclaim against appellants; waiver by appellees of a right to claim an ownership interest in any of the three tracts; and laches and estoppel. Lastly, the jury awarded attorney's fees to appellees, but not to appellants.

On November 17, 1986, the same trial judge entered judgment declaring that a purchase money resulting trust and a constructive trust exist in favor of appellees so that fee simple title to an undivided one-half interest in each of the three tracts, Rivoire Ranch, Biffle Place, and Holland Place, is vested in appellees. After awarding attorney's fees to appellees, the judgment provided:

> This judgment shall remain interlocutory until a final judgment of partition is rendered. All other prior orders regarding the preliminary decrees and determinations of ownership of the Rivoire Ranch, Holland Place, and Biffle Place are set aside.

Soon thereafter, the court signed an order severing the November 17, 1986 judgment regarding the Rivoire Ranch, Biffle Place, and Holland Place properties "from the other disputes in this cause," and ordering that the November 17, 1986 judgment shall be regarded as final for purposes of perfecting appeal and issuing execution.

Appellants raise sixteen points of error on appeal.

---

**4.** We note that each preliminary decree was signed by a different trial judge than the one who presided at the October 1986 jury trial.

**5.** The jury trial was prior to the enactment of the recent version of TEX.R.CIV.P. 277 whereby the supreme court established that a trial court

shall submit "questions" to the jury, as opposed to "special issues." We shall use the term "special issues" in this opinion so as to maintain continuity with the proceedings in the trial court.

## TRIAL COURT'S AUTHORITY TO ENTER JUDGMENT

■ In their first point of error, appellants contend the trial court erred in refusing to vacate the November 17, 1986 judgment because this judgment is void as a matter of law for the reason that the trial court was without jurisdiction to enter the judgment. Appellants' second point of error asserts error by the trial court in denying appellants' motion for leave to file a supplemental motion for new trial which informed the trial court it did not have jurisdiction to relitigate the property ownership interests, and that the judgment was void. Appellees respond that the trial court's final judgment was proper, and, in any event, appellants have waived their right to challenge its validity.

Before continuing further with this discussion, it is necessary to set out the chronology of the post-judgment events which transpired in this case. Appellants timely filed their motion for new trial; a hearing on that motion began on February 9, 1987,[6] and was continued until February 26, 1987. During the interim (62 days after the trial court's order finalizing the November 17, 1986 judgment), appellants filed a motion for leave to file a supplemental motion for new trial. In this document, appellants urged for the first time that the trial court had been without jurisdiction to hear appellees' counterclaim and render the November 17, 1986 judgment. Appellants asserted the trial court's judgment was void because the two prior preliminary decrees entered in this cause were final judgments fully disposing of the matters sought to be litigated by appellees' counterclaim.

Prior to the filing of this supplemental motion for new trial, the only mention in the record of appellants' jurisdictional challenge[7] was in appellants' answers to appellees' counterclaim, wherein appellants alleged the affirmative defenses of: laches, lack or failure of consideration, res judicata, statute of frauds, statute of limitations, waiver, and estoppel. These matters were never pleaded with more specificity. Although several of these affirmative defenses were submitted to the jury, res judicata was not included in the jury charge.

At the February 26, 1987 new trial hearing, the court heard evidence relating to appellants' original and supplemental motions for new trial. Appellees' contention was that prior to trial appellants had expressly waived the issue of res judicata because appellants recognized that the two prior preliminary decrees contained numerous errors (one such error being that the preliminary decrees had "mistakenly" disposed of the mineral rights in the three tracts). Three of the attorneys who participated in the trial testified at this hearing, and although their recollections differed as to whether appellants had expressly agreed to waive any res judicata issue, one of appellants' trial attorneys acknowledged that during the trial appellants had not offered any evidence to support their res judicata plea. Further, the record does not reflect that appellants requested the submission of a jury issue on this affirmative defense. At the conclusion of this hearing, the court found it lacked jurisdiction to consider appellants' supplemental motion for new trial because it was untimely filed, and therefore denied appellants' motion for leave to file this document. The court then denied appellants' original motion for new trial.

Appellees assert that appellants have waived, either expressly or by their failure to adequately plead and prove res judicata, the right to challenge the trial court's authority to enter the November 17, 1986 judgment. Appellants disagree and respond that the two preliminary decrees entered by the same trial court were final judgments, and the trial court was obligated to take judicial cognizance of these decrees and of the fact that the court itself

---

6. The appellate record does not contain a statement of facts from the February 9, 1987 hearing.

7. Appellants had filed a "Motion for Judgment Non Obstante Veredicto and to Disregard Special Issue Jury Findings." Nowhere in this document is there any mention of appellants' current contention that the trial court lacked jurisdiction to relitigate ownership to the three tracts of land.

had no jurisdiction to enter the subsequent November 17, 1986 judgment relitigating title to these same properties; i.e., appellants contend there is fundamental error. Alternatively, appellants maintain that if it was necessary for them to take some action to preserve error concerning this issue, they adequately pled the issue of res judicata and in their supplemental motion for new trial they expressly made the court aware of their jurisdictional argument (which, they contend, may be raised at any time).

In deciding this issue we must address the unique procedure governing partition proceedings. Partition proceedings are conducted in successive stages; the first stage is stated in TEX.R.CIV.P. 760 as follows:

> Upon the hearing of the cause, the court shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land which may arise.

*Id.* Additionally, before entering the decree of partition, the trial court shall determine whether the property, or any part thereof, is susceptible of partition. TEX.R. CIV.P. 761. If so, the court shall:

[E]nter a decree directing the partition of such real estate, describing the same, to be made in accordance with the respective shares or interests of each of such parties entitled thereto, specify in such decree the share or interest of each party, and shall appoint three or more competent and disinterested persons as commissioners to make such partition in accordance with such decree and the law, a majority of which commissioners may act.

*Id.* The commissioners then have the responsibility of dividing the designated real estate in a manner they deem proper, "having due regard in the division to the situation, quantity, and advantages of each share, so that the shares may be equal in value, as nearly as may be, in proportion to the respective interests of the parties entitled." TEX.R.CIV.P. 768.

After the commissioners have completed the partition, they must report in writing to the trial court, indicating the actions they have taken. TEX.R.CIV.P. 769. If the court is of the opinion that a fair and equitable division of the real estate cannot be made, it shall order a sale of so much as is incapable of partition. TEX.R.CIV.P. 770. Any party to the suit may file objections to the commissioners' report, and "[i]f the report be found to be erroneous in any material respect, or unequal and unjust, the same shall be rejected, and other commissioners shall be appointed by the Court, and the same proceedings had as in the first instance." TEX.R.CIV.P. 771.

Each stage of the partition suit results in a final, appealable judgment, as stated by the Texas Supreme Court:

> It is sometimes the case that there may be more than one appeal in the same case, when orders are made at different times which finally dispose of the subject-matter of that particular order. A familiar instance is a case of *partition,* wherein there may be a decree which determines the rights of the parties in the property *and is a final judgment upon the merits of the case. From this an appeal may be taken,* leaving the case before the court for the purpose of actual division of the property among the claimants according to the decree entered. *When the partition shall have been made and the decree of partition entered, there is another final judgment or order, from which an appeal may likewise be taken.* White v. Mitchell, 60 Tex. 164; *Moor v. Moor* (Tex.Civ. App.) 63 S.W. 347.

*Waters–Pierce Oil Co. v. State,* 107 Tex. 1, 106 S.W. 326, 328 (1907) (emphasis added).

In applying this procedure to the facts of the case at bar we are guided by several previous opinions. A case with facts analogous to those before us is *McFarland v. Hall,* 17 Tex. 600 (1856). In that partition action the trial court entered a judgment in 1854 determining the parties' ownership interests in the property, and appointing commissioners; this judgment was not appealed. *Id.* at 605–07. Subsequently, one

of the parties (appellee) filed pleadings alleging the prior decree was erroneous inasmuch as it had been mistakenly entered without reference to that party's rights in a certain strip of land, and the party prayed the judgment be corrected. The other party (appellant) excepted in the trial court on the ground that the 1854 judgment was in strict conformity with the rights of the parties, and because ownership rights had previously been adjudicated, appellee was now precluded from asserting additional ownership claims. The trial court overruled appellant's exception and the case was submitted to the jury. Judgment was rendered: setting aside the report of the commissioners; revising, amending and correcting the 1854 judgment; and rendering judgment in favor of appellee. The Texas Supreme Court reversed, stating:

> The principal question upon this appeal is, whether the decree of the 12th of October, 1854, was final and conclusive of the matters therein adjudicated. It certainly determined all the issues of fact raised by the pleadings; it distinctly ascertained and adjudicated the rights of the parties, and settled definitively their respective interests in the subject matter of the suit. It put an end to all matter in litigation in the case. After it was rendered nothing remained but to carry it into effect, or execute the judgment of the court. This would seem to bring it within the legal definition of a final judgment.
>
> . . . .
>
> As the decree disposed of the issues, and settled definitively the rights of the parties, *it was not subject to revision in the same court, at a subsequent term, unless for causes which would authorize a new trial or review.*

*Id.* at 613, 614 (emphasis added). The court reversed and remanded holding the trial court erred in setting aside the 1854 judgment and retrying the case upon new issues, after term, instead of confining its action to the report of the commissioners and matters arising therefrom. *Id.* at 615.

In contrast to *McFarland* in which the initial preliminary determination of ownership was challenged in an appeal in the same cause, the supreme court later determined that partition judgments cannot be *collaterally* attacked, except under the same rules permitting attacks on other judgments. *See Garza v. Cavazos,* 148 Tex. 138, 221 S.W.2d 549, 552 (1949). *Garza* involved a collateral attack upon a partition judgment that had been rendered twenty years previously. The supreme court held that the prior judgment was res judicata as to matters decided therein, and was binding upon all parties to the later collateral attack. *Id.*

In support for their contention that the two preliminary decrees in the instant case were final judgments which could not later be set aside by the trial court, appellants rely upon the case of *Marmion v. Wells,* 246 S.W.2d 704 (Tex.Civ.App.—San Antonio 1952, writ ref'd). In that partition case, the appellants appealed from an order approving the report of the commissioners, but in their appeal appellants complained of actions taken by the trial court in the first decree which had determined the various property interests. *Id.* at 705. In its opinion, the court stated:

> The first decree in partition is sometimes referred to as the "interlocutory decree" while the second is termed the "final decree." *Montgomery v. Huff,* Tex.Civ.App., 11 S.W.2d 237. However, the first decree is interlocutory only in the sense that it is intermediate in relation to the second decree. *The rights and matters therein determined are final and it is appealable as a final judgment.*

*Id.* (emphasis added). After reciting the previously-quoted language from *Waters-Pierce,* the *Marmion* court stated "[i]t is well settled that upon an appeal from the second or final decree matters determined by the first or interlocutory decree cannot be reviewed...." *Id., citing White v. Mitchell,* 60 Tex. 164 (1883). Accordingly, the case held that the first decree could not be reviewed upon appeal from the second decree. *Marmion,* 246 S.W.2d at 706.

*White* was a partition action wherein appellants appealed from a judgment confirming the commissioners' report. On appeal

appellants attempted to raise several points of error relating to the trial court's preliminary decree which determined the parties' ownership interests. The supreme court held the preliminary decree was final and could not have been altered by the trial court at a subsequent term; therefore, appellants could not raise errors relating to the preliminary decree. *White*, 60 Tex. at 165–66.

Appellees refer us to the case of *Pfeffer v. Meissner*, 286 S.W.2d 241 (Tex.Civ.App. —Galveston 1955, writ ref'd n.r.e.) in support of their argument that relitigation of ownership in the three tracts was not fundamental error, but was at most res judicata, and that the trial court in the case before us had authority to enter the November 17, 1986 judgment, which set aside the determinations of ownership previously made in the two preliminary decrees, regarding these three tracts of land.

*Meissner* was an interlocutory appeal from a denial of injunctive relief pending final disposition of a suit seeking to declare void the trial court's order in a previous partition suit, and to enjoin any action being taken pursuant to this order. *Id.* at 243. The parties seeking the injunction contended that a prior June 19, 1951 partition order was void, and therefore unenforceable. The sequence of events leading up to the entry of this June 19, 1951 order was as follows: on February 20, 1951, the trial court entered an order determining the parties' ownership interests in certain real estate, ordering partition, and appointing commissioners. On June 19, 1951, after the time had expired for appealing the initial order, the trial court found the lands incapable of partition. *See now* TEX.R. CIV.P. 770. This June 19, 1951 order was appealed and the judgment was affirmed. *Pfeffer v. Pfeffer*, 269 S.W.2d 436 (Tex.Civ. App.—Galveston 1954, writ ref'd n.r.e.). Subsequently, an injunction action was filed seeking to declare the court's June 19, 1951 order void, and to enjoin any action being taken pursuant to this order; the trial court's denial of the injunctive relief was appealed. *Meissner*, 286 S.W.2d 241. Therefore, the second *Pfeffer* case was in effect a *collateral attack* on the June 19,

1951 non-partition order. *See id.* The appellate court held that "the entry of a final order determining the interests, rights, and equities of the parties and the susceptibility of the property to partition in kind does not divest the court either of jurisdiction of the parties or of the actual execution and carrying out of the partition." *Id.* at 247. Citing *White v. Mitchell*, 60 Tex. 164 (1883) and *Tieman v. Baker*, 63 Tex. 641 (1885), the *Pfeffer* court stated:

> There is no suggestion in either of these cases that the court was without power to enter the later orders complained of because these later orders were in conflict with determinations which had been made in their initial orders at previous terms. And the reason is plain to our minds. *What is determined in the initial orders of course becomes res adjudicata, but only res adjudicata.* Nothing determined there becomes sacrosanct in the sense that until set aside any subsequent conflicting determination is ipso facto void. After all, res adjudicata *is only an affirmative defense which must be affirmatively plead to be availed of.*

*Pfeffer*, 286 S.W.2d at 247–48 (emphasis added).

In affirming the denial of the injunctive relief the *Pfeffer* court concluded that when the trial court entered its first order on February 20, 1951, it was not divested of jurisdiction:

> [T]o enter any and all orders appropriate or necessary to carry out an actual division and distribution of the property among the parties. Since the court retained full jurisdiction of the parties and of the subject matter of the actual division and distribution of the subject property, *the fact that its later order might be improper or in conflict with its prior order would not render it void but only erroneous. And such error is of course waived unless availed of by direct appeal.*

*Id.* at 248 (emphasis added).

This emphasized language from *Pfeffer* appears to be contrary to the principles of law espoused by the supreme court in

*McFarland,* and approved more recently by that court's unqualified refusal of writ of error in *Marmion. See McFarland,* 17 Tex. 613–15, and *Marmion,* 246 S.W.2d at 705–06. This contradiction was addressed in *Burkitt v. Broyles,* 340 S.W.2d 822 (Tex. Civ.App.—Waco 1960, writ ref'd n.r.e.), which involved an appeal from the second stage of a partition action. A preliminary decree had been previously entered determining ownership of real estate; this preliminary decree was affirmed on appeal. *Burkitt v. Broyles,* 317 S.W.2d 762 (Tex. Civ.App.—Houston 1958, writ ref'd n.r.e.). After the commissioners' report was subsequently filed, appellant objected alleging that title to the real estate wholly failed because it had been previously conveyed to a third person. *Burkitt,* 340 S.W.2d at 823. The trial court held that all questions affecting title had already been adjudicated by the preliminary decree, and could not be reviewed by objections to the report of the commissioners. *Id.* The appellate court agreed, holding the trial court did not err in refusing to rescind or modify the preliminary decree since that document was conclusive, and the appellant was precluded from subsequently questioning the trial court's prior determination of title to the property. *Id.* at 823–24. The court specifically addressed the seemingly contrary result in *Pfeffer* and stated:

> We are unable to follow the construction placed on the *McFarland* decision in *Pfeffer v. Meissner,* ... as we think the case held directly opposite to the effect there given it. This is made clear by *White v. Mitchell* ... in which Justice Stayton again held the initial decree was conclusive.

*Id.* at 824. The *Burkitt* court then based its decision upon *Marmion v. Wells,* and explained the inconsistent result in *Pfeffer* by stating that the *Marmion* decision apparently had not been called to the court's attention in *Pfeffer. See id.*

The distinction between the facts in *Pfeffer* and the case before us is that *Pfeffer* involved a *collateral* attack on the validity of a partition judgment entered in a prior cause, whereas the instant appeal is a *direct* attack on the propriety of the trial court's entry of judgment following the jury trial. We do not view the quoted language from *Pfeffer* to be controlling in this direct appeal. As did the court in *Burkitt,* we adhere instead to the reasoning of the Texas Supreme Court in *McFarland,* and the court of appeals in *Marmion. See McFarland,* 17 Tex. 600; and *Marmion,* 246 S.W.2d 704.

■ We find the trial court's two preliminary decrees in the instant case were final and conclusive regarding the parties' actual ownership interests in the real estate in question. *See Griffin v. Wolfe,* 610 S.W.2d 466, 466–67 (Tex.1980) (per curiam). Since these decrees were not appealed they could not later be set aside except by appropriate post-trial proceedings, such as a motion for new trial or a bill of review. *See McFarland,* 17 Tex. at 613–14. We further find the trial court erred in setting aside the two preliminary decrees, and in relitigating the ownership issue.

## PRESERVATION OF ERROR

Our next determination must be whether appellants have waived the right to challenge the relitigation of the parties' ownership interests in the three tracts, or whether this error is so fundamental that it cannot be waived.

Appellants contend alternatively: they properly filed a motion for new trial informing the trial court of the jurisdictional error at a time when the court retained plenary jurisdiction over the case; the relitigation issue is a jurisdictional error apparent on the face of the record, and therefore is fundamental in nature; and the trial court was compelled to judicially notice that it was without jurisdiction to hear appellees' counterclaim.

Appellees, on the other hand, maintain that any error in relitigating the title question was not preserved and the issue is not one of jurisdiction, but is one of res judicata which was either expressly waived by appellants, or not preserved because appellants failed to submit jury issues on this affirmative defense.

■ The general rule is that "[i]n order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context." TEX.R.APP.P. 52(a); *see Lemons v. EMW Manufacturing Co.*, 747 S.W.2d 372, 373 (Tex.1988) (per curiam). Ordinarily a procedural error must be preserved by timely action by the party complaining, because a trial judge can usually correct his procedural error if it is brought to his attention. *Lewis v. Texas Employers' Ins. Ass'n*, 151 Tex. 95, 246 S.W.2d 599, 600 (1952). Additionally, a point of error not preserved is not before the appellate court for review. *Lemons*, 747 S.W.2d at 373.

APPELLANTS' MOTION FOR NEW TRIAL

In their second point of error appellants claim the trial court erred in not considering their supplemental motion for new trial. Appellants timely filed their original motion for new trial which made no mention of any jurisdictional problems with the case. Motion for leave to file the supplemental motion was filed sixty-three days after the trial court's final judgment was signed. Appellants assert that when they filed this motion, they timely complied with TEX.R.APP.P. 52(a) and informed the trial court it lacked jurisdiction. The rule applicable to motions for new trial provides as follows:

(b) One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled *and within thirty days after the judgment or other order complained of is signed.*

TEX.R.CIV.P. 329b (emphasis added). Additionally, a court may enlarge certain time periods, "but it may not enlarge the period for taking any action under the rules relating to new trials except as stated in these rules...." TEX.R.CIV.P. 5.

■ It is well established that any *amended* motion for new trial must be filed within thirty days after the judgment is signed, or such motion is a nullity and may not be considered. *See Baker v. Wal–Mart Stores, Inc.*, 727 S.W.2d 53, 55 (Tex. App.—Beaumont 1987, no writ) (per curiam); *Foster Co. v. Glacier Energy, Inc.*, 714 S.W.2d 48, 48–9 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.); and *Lind v. Gresham*, 672 S.W.2d 20, 22 (Tex.App.—Houston [14th Dist.] 1984, no writ). We hold that the rule of these cases applies to appellants' *supplemental* motion for new trial, and the trial court did not err in denying appellants' motion for leave to file this document, because appellants failed to comply with TEX.R.CIV.P. 329b.

■ Appellants also allege the trial court should have exercised its plenary jurisdiction and considered the supplemental motion for new trial. TEX.R.CIV.P. 329b(e) provides that if a motion for new trial is *timely* filed the trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such *timely* filed motions are overruled, either by written and signed order or by operation of law, whichever occurs first. Although it is undisputed that the trial court in the instant case still retained plenary power when appellants attempted to file their supplemental motion for a new trial, we cannot hold the trial court erred in declining to exercise its plenary power to allow the filing of appellants' supplemental motion for new trial. Were we to do so, this would effectively eliminate the requirement that in order to timely apprise the trial judge of any alleged error, a supplemental or amended motion for new trial must be filed within the thirty-day period following the date judgment is signed.

Accordingly, we overrule appellants' second point of error.

FUNDAMENTAL ERROR

■ Appellants contend that the error of the trial court in the instant case in relitigating the parties' ownership interests in the three tracts of land is jurisdictional, and may therefore be raised at any time.

*See Grounds v. Tolar I.S.D.,* 707 S.W.2d 889, 893 (Tex.1986). Appellants also assert the related contention that the trial court erred in not taking judicial cognizance, on its own motion, of the procedural history of the case. The concept of fundamental error still exists, but only in those rare circumstances in which the record shows on its face that the trial court lacked jurisdiction, or that public interest is directly and adversely affected as that interest is declared in the statutes and constitution of this state. *Cox v. Johnson,* 638 S.W.2d 867, 868 (Tex.1982) (per curiam); *Texas Indus. Traffic League v. Railroad Com'n,* 633 S.W.2d 821, 823 (Tex.1982).

We note that in both the *McFarland* and *Burkitt* partition cases discussed previously, the trial court was made aware of the objecting party's challenge to that court's authority to alter the original preliminary decree which determined ownership interests in the property. *See McFarland,* 17 Tex. at 609; *Burkitt,* 340 S.W.2d at 823. In *White* and *Marmion*—also partition cases—the issue was whether appellants could make their first challenge to the trial court's preliminary determination of ownership interests during the appeal from the second stage of the partition suit, when the matter on appeal was actually the subsequent judgment entered approving the commissioners' report. *See White,* 60 Tex. at 165; *Marmion,* 246 S.W.2d at 705. Therefore, although in these latter two cases the alleged error was not raised in the trial court, such action was clearly unnecessary inasmuch as neither party requested that the trial court relitigate or modify the preliminary decree. Accordingly, none of these four cases have exactly the same procedural aspects as the case at bar.

Appellants refer to several non-partition cases wherein the appellate court reversed, holding the trial court was without jurisdiction to enter the order or judgment being appealed. *See Memorial Hosp. v. Gillis,* 741 S.W.2d 364 (Tex.1987) (per curiam) (trial court erred in reinstating plaintiff's lawsuit after the order dismissing for want of prosecution was final); *McEwen v. Harrison,* 162 Tex. 125, 345 S.W.2d 706 (1961)

(trial court erred in vacating a default judgment after it had become final); *Aetna Ins. Co. v. Dancer,* 215 S.W. 962 (Tex.Comm'n App.1919, judgm't adopted) (trial court erred in granting new trial at a subsequent term of court); *Citizens State Bank v. Caney Investments,* 746 S.W.2d 477 (Tex. 1988) (per curiam) (trial court erred in permitting intervention of third parties after judgment had been rendered and become final); and *Wichita Falls & S.R. Co. v. McDonald,* 141 Tex. 555, 174 S.W.2d 951 (1943) (trial court erred in granting a plea of privilege more than thirty days after it had originally overruled the plea). We initially note that appellees make no attempt to discuss and counter appellant's arguments regarding the applicability of these cases to the instant case. However, we believe an analysis of these cases is crucial to our determination of whether the trial court's error in the instant case is fundamental.

*Memorial Hosp. v. Gillis* dealt with a situation wherein the trial court reinstated plaintiff's workers' compensation lawsuit forty days after it had been dismissed for want of prosecution. 741 S.W.2d at 365. The action later went to trial, resulting in a jury verdict in favor of plaintiff. The supreme court reversed and reinstated the trial court's order dismissing plaintiff's cause for want of prosecution, stating that compliance with the time periods prescribed by TEX.R.CIV.P. 165a and 306a is a jurisdictional prerequisite. *Id.* at 366. The case further held that the trial court was without jurisdiction to reinstate plaintiff's cause and the subsequent judgment entered in plaintiff's favor was therefore a nullity. *Id.* The opinion does not reflect whether the appellant objected in the trial court to the untimely filing of plaintiff's motion to reinstate. *See Memorial Hosp.,* 741 S.W.2d at 365–66, *reversing* 731 S.W.2d 692, 694–95 (Tex.App.—Houston [1st Dist.] 1987).

The mandamus proceeding of *McEwen v. Harrison* involved a trial judge's action in granting a default judgment against a defendant who subsequently filed a motion to vacate the judgment, claiming service of

citation was improper. It was undisputed that this motion could not be considered as a motion for new trial (it was not timely filed), nor could it be treated as a bill of review (it did not contain the allegations required to qualify it as such). 345 S.W.2d at 707. Nonetheless, the trial court granted the motion and vacated the default judgment. *Id.* The supreme court held that appeal by writ of error or a bill of review to set aside the judgment are the exclusive methods by which the defendant could have the default judgment vacated or set aside, and the trial court's order vacating the default judgment was void. *Id.* at 711.

▪ Appellants rely heavily upon the case of *Aetna Ins. Co. v. Dancer*, 215 S.W. 962 (Tex.Comm'n App.1919, judgm't adopted).[8] *Dancer* involved a suit on an insurance policy resulting in a jury verdict for the defendant, which the trial court noted on the docket sheet during the April term of court. No actual judgment was signed. Plaintiff filed a motion for new trial, and after the trial court's term ended, an agreed judgment nunc pro tunc was entered for the defendant. Plaintiff then filed a second motion for new trial which was granted and the case was re-tried resulting in a judgment for the plaintiff. On appeal the Commission of Appeals held the judgment was final during the April term of the court, notwithstanding that a written judgment had not yet been entered. *Dancer*, 215 S.W. at 963. The court opined:

> The judgment being final at the term at which it was rendered, and having in no way been set aside at that term, the court was without power, on motion for new trial, to set it aside at a subsequent term....
>
> ....

The court being without power to grant a new trial at a subsequent term of the court to that at which the judgment was rendered, the order granting the new trial *and all subsequent proceedings in the case are absolutely void* [*see* footnote [9], below]....

> ....
>
> *Nor do we think the defendant was required to plead the judgment rendered at the April term of the court in bar to further proceedings in the case upon the second trial. Both trials were had in the same tribunal and upon the same cause of action, and the court was bound to take judicial cognizance of its previous action in the case.* [Citations omitted.]

*Id.* (emphasis added).

In *Citizens State Bank v. Caney Investments*, the trial court granted a divorce, signed the decree, and appointed a receiver to take possession of and sell certain assets, including specified real estate. *See Citizens State Bank v. Caney Investments*, 733 S.W.2d 581, 584 (Tex.App.—Houston [1st Dist.] 1987), *rev'd*, 746 S.W.2d 477. Almost a year later several third parties were permitted to intervene in the pending receivership action. They requested, and were granted, an order permanently enjoining a lienholder from foreclosing its lien on certain pieces of realty. 733 S.W.2d at 584. The Texas Supreme Court held the trial court and the court of appeals erred by assuming jurisdiction over the intervenors' cause of action, because the judgment had become final prior to the third parties' intervention. 746 S.W.2d at 478. There is no mention in either the court of appeals' opinion or that of the supreme court as to whether this jurisdic-

---

**8.** As pointed out by appellants, the supreme court has directed the following approach be taken with regard to opinions of the Texas Commission of Appeals that have not been adopted by the Texas Supreme Court:

> These opinions are not binding on the court in the same sense that the approved and adopted opinions are, but they are given great weight by us, and the courts of civil appeals and all lower courts should feel constrained to follow them, until they are overruled by the Supreme Court.

*National Bank of Commerce v. Williams*, 125 Tex. 619, 84 S.W.2d 691, 692 (1935).

**9.** A judgment is *void* only when it is apparent that the court rendering judgment "had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987) (opinion on reh'g). Errors other than lack of jurisdiction render the judgment merely voidable. *Id.*

tional issue was ever raised at the trial court level. *See* 733 S.W.2d at 586, and 746 S.W.2d at 478.

Finally, in *Wichita Falls & S.R. Co. v. McDonald,* the supreme court held that a trial court's order overruling a defendant's plea of privilege was final thirty days after its rendition, and the trial court was thereafter without jurisdiction to set aside the order, except by bill of review. 174 S.W.2d at 953. The trial court had overruled the plea of privilege, but after that order became final, the trial court entered an order: undertaking to set aside the prior order; granting the plea of privilege; and transferring the cause to the county in which the defendant sought to be sued. *See* the court of appeals' opinion, *Gillette Motor Trans. Co. v. Wichita Falls & South R. Co.,* 170 S.W.2d 629, 630 (Tex.Civ.App.— Fort Worth 1943). The court of appeals reversed the last order entered by the trial court and held such order to be void. *Id.* at 632 (holding approved by Texas Supreme Court in subsequent mandamus proceeding brought to require the Court of Civil Appeals to certify this question to the Texas Supreme Court, 174 S.W.2d 951).[10] The court of appeals' opinion clearly indicates that the issue of the trial court's jurisdiction to set aside its order overruling the plea of privilege was *not* raised until the later appeal of the granting of the plea of privilege. 170 S.W.2d at 630–31.

CONCLUSION

We are faced here with the age-old premise that tough cases make bad law.

We are cognizant of the fact that the judge who conducted this trial had not participated in any of the judicial proceedings held in this cause from the date the first pleadings were filed in August 1980, until his assignment to this case on January 14, 1986. However, appellants' original counterclaim (upon which the judgment being appealed herein is based) was not filed until April 2, 1986—after the judge's assignment to this cause. Unfortunately the new trial judge was not informed of the specifics of the overriding jurisdictional problem with which he was confronted.[11]

Nonetheless, our legal system was founded upon the basis of stare decisis and we are bound by the established legal precedents discussed herein. We are unable to distinguish our procedural situation from the holdings of *Wichita Falls* and *Dancer. See Wichita Falls,* 170 S.W.2d 629 and 174 S.W.2d 951; *Dancer,* 215 S.W. 962. All proceedings in our case were had in the same tribunal and upon the same cause of action. As applied to this situation, the rule of *Dancer* is that the trial court was bound to take judicial cognizance of its previous action in the case. *See Dancer,* 215 S.W. at 963. *See also Vahlsing, Inc. v. Missouri Pac. R. Co.,* 563 S.W. 2d 669, 674 (Tex.Civ.App.—Corpus Christi 1978, no writ) ("It is axiomatic that a party is not required to prove facts that a trial court judicially knows. A trial judge judicially knows what has previously taken place in the case on trial.") We interpret

---

10. The decision of the court of civil appeals in this plea of privilege appeal was conclusive on the law and the facts. *See* former TEX.REV. CIV.STAT.ANN. art. 1821(5) (ch. 33, sec. 1, 1929 Tex.Gen.Laws 68, *repealed by* ch. 480, sec. 26(1), 1985 Tex.Gen.Laws 1720, 2048), and former TEX.REV.CIV.STAT.ANN. art. 1728(6) (ch. 144, sec. 1, 1927 Tex.Gen.Laws 214, 215, *repealed by* ch. 480, sec. 26(1), 1985 Tex.Gen.Laws 1720, 2048). However, the Texas Supreme Court had appellate jurisdiction in cases in which the court of civil appeals held differently from a prior decision of another court of civil appeals, or of the supreme court upon any question of law material to a decision of the case. *See* former article 1728(2), *supra;* TEX.GOV'T CODE ANN. sec. 22.001(a)(2) (Vernon 1988). The complaining party could seek supreme court review either by writ of error or by certificate from the court of civil appeals, and the Texas Supreme

Court could issue writs of mandamus compelling a court of civil appeals to certify a question to the supreme court. *See* former 1925 TEX. REV.CIV.STAT.ANN. art. 1729 and 1733, *repealed by* ch. 480, sec. 26(1), 1985 Tex.Gen Laws 1720, 2048. *See now,* TEX.GOV'T CODE ANN. sec. 22.001(b), *supra;* TEX.R.APP.P. 110, 121, and 122.

11. At the hearing on appellants' motion for new trial, this judge indicated that prior to trial the attorneys involved in the case had assured him the only question to be decided was title to the surface interests in the three tracts of land at issue, and that none of the attorneys had ever mentioned that jurisdiction or res judicata were potential problems. The judge stated that this issue was a "complete surprise" to him.

the cited cases as requiring that we must reluctantly find the trial court committed fundamental error by relitigating ownership interests in the three tracts of land under discussion—the jury trial was held at a time when the trial court had lost jurisdiction to alter the terms of the two prior final preliminary decrees of partition. We therefore sustain appellants' first point of error and hold the trial court erred in refusing to vacate its November 17, 1986 judgment, because this is a void judgment. We further hold the trial court's June 19, 1981 preliminary decree of partition is a final disposition of the parties' ownership interests in the Rivoire Ranch and Biffle Place properties, and the second preliminary decree of partition of September 12, 1983 is a final disposition of the parties' ownership interests in the Holland Place property.

Because of our ruling, it is unnecessary to address the remainder of appellants' points of error.

We reverse and set aside the trial court's November 17, 1986 Judgment, and we render judgment that appellees take nothing by their counterclaim. All costs of this appeal are assessed against appellees.