**Robert REVIEA, Appellant,**

v.

**MARINE DRILLING COMPANY, Appellee.**

**No. 13–89–407–CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 31, 1990.

Rehearings Overruled Nov. 29 and Dec. 13, 1990.

Mark G. Cypert, G.P. Hardy, Hardy, Milutin & Johns, Houston, for appellant.

Ralph F. Meyer, C. Andrew Waters, Royston, Razor, Vickery & Williams, Corpus Christi, for appellee.

Before KENNEDY, SEERDEN and KEYS, JJ.

OPINION

KENNEDY, Justice.

Appeal is taken from the jury trial of a maritime personal injury suit brought under the Jones Act and general maritime law. Based upon the jury's verdict, the trial court entered a take nothing judgment in favor of appellee Marine Drilling Company. Appellant Robert Reviea asserts five points of error. We affirm the judgment.

Reviea brought suit against his employer, Marine Drilling Company, alleging that he was injured on its drilling rig and that his injury was caused by either the negligence of Marine Drilling or the unseaworthiness of its vessel. The jury failed to find Marine Drilling negligent and failed to find its vessel unseaworthy. By his first two points of error, Reviea challenges the legal and factual sufficiency of the evidence supporting the jury's verdict.

At trial, Reviea testified that while he was working on a rotary table, he slipped and fell off the edge, injuring his knee. The rotary table stands approximately two to three inches above the drilling floor. Reviea claimed that the rotary table was covered with slippery fluids and that Marine Drilling's failure (1) to provide a pad on the rotary table and (2) to provide other devices to aid in traction, made the vessel unseaworthy and established Marine Drilling negligent.

■■■■ When reviewing a point of error complaining that a jury finding is against the great weight and preponderance of the evidence, an appellate court must examine the record to determine if there is some evidence to support the finding and, if so, that the finding is either so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust or that the great preponderance of the evidence supports its nonex-

istence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). This standard of review not only applies to a jury's finding but also applies to a jury's failure to find. *See Ames v. Ames*, 776 S.W.2d 154, 158 (Tex.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988). Thus, an appellate court may not reverse simply because it concludes that the evidence preponderates toward an affirmative jury finding. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). We may reverse only if the *great weight* of the evidence supports an affirmative finding. *Id.*

■■■ *Jones Act Negligence.* Under the Jones Act, a seaman may bring a negligence action against his employer. *See* 46 U.S.C. § 688 (1982). The standard of liability under the Jones Act is established through the Federal Employers' Liability Act (45 U.S.C. §§ 51–60 (1986)) ("FELA"). *Ferguson v. Moore McCormack Lines, Inc.*, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957). Recovery is allowed once the seaman establishes that he has been injured as the result of his employer's negligence. *Boeing Co. v. Shipman*, 411 F.2d 365, 370 (5th Cir.1969). However, the Jones Act imposes a higher standard of care upon the employer; thus, the seaman has the burden to prove only the employer's *slight* negligence. *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1783, 108 L.Ed.2d 785 (1990); *Rogers v. Eagle Offshore Drilling Serv., Inc.*, 764 F.2d 300, 304–05 (5th Cir.1985); *Allen v. Seacoast Prod., Inc.*, 623 F.2d 355, 361 (5th Cir. 1980).[1]

1. In a FELA action, slight negligence is defined as "a failure to exercise great care." *Boeing*, 411 F.2d at 371. In the present case, negligence was defined in the jury charge as "the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under the circumstances." Hence, the Jones Act's higher standard of care, requir-

ing a showing of the employer's failure to exercise *great* care, was not submitted to the jury. Reviea now complains on appeal of the jury's failure to find slight negligence on the part of Marine Drilling. No objection was made either to the court's negligence definition or to the absence of a slight negligence question. Reviea has waived his right to recover for any slight

■ In the present case, Reviea alleged that Marine Drilling was negligent in two respects: first, failing to provide a rotary pad on the rotary table and, second, failing to provide other devices to aid in traction. At trial, Reviea presented the testimony of three safety experts. Essentially, each testified that the use of a rotary pad would decrease the chances of slipping while working on the rotary table. One testified that he was not sure whether or not the absence of a pad was a deficiency, while another testified that the absence of a pad constitutes negligence. However, the latter expert also testified that his own company's safety manual does not require a pad on the rotary table. Frankie Wilbourn, a roughneck on the rig, testified that rotary pads are intended to prevent slips. Yet, Bill Hathcock, the rig's tool pusher, testified that rotary pads were not required on these rigs. In its case-in-chief, Marine Drilling presented the testimony of an expert who stated that sixty to sixty-five percent of the rigs have rotary pads, but, just as Hathcock, he testified that the pads are not required.

Regarding Marine Drilling's alleged failure to provide other traction devices, the evidence showed that "cocoa mats" were available for an employee's use. Henderson testified that cocoa mats can be placed on the rotary table to assist the employee's footing. He further testified that cocoa mats were available for Reviea's use on the rig, and the decision whether or not to use them is made by the employee.

After carefully reviewing the record, we are mindful that we may not reverse simply because we may conclude that the evidence preponderates toward an affirmative answer. *See Herbert*, 754 S.W.2d at 144. We conclude that the jury's failure to find negligence was not so against the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

negligence of Marine Drilling; neither the proper standard nor the proper question was submitted to the jury. *See* Tex.R.Civ.P. 274, 279.

■ *The Warranty of Seaworthiness.* A vessel owner must provide seamen with a "seaworthy" vessel on which to work. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960). Seaworthiness within the context of personal injury litigation refers to a vessel owner's nondelegable duty to provide a ship which is reasonably fit for its intended use. *Id.* at 550, 80 S.Ct. at 932; *Miles*, 882 F.2d at 981. A shipowner's negligence is not required for a seaman to recover under an unseaworthiness claim because the claim is not based on fault. *Mitchell*, 362 U.S. at 548, 80 S.Ct. at 932; *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 100, 64 S.Ct. 455, 458, 88 L.Ed. 561 (1944); *Miles*, 882 F.2d at 981. Seaworthiness is a warranty that the vessel owner owes to the seaman. Schill, *The Unsolvable Puzzle of Maritime Personal Injury Litigation: One False Move and You're Out*, 24 Hous. L.Rev. 635, 644 (1987).

■ From the evidence previously discussed, the jury was free to find that the rig was reasonably safe, suitable, and fit for its intended purpose.[2] Again, after reviewing the record, we find that the jury's finding is not so contrary to the overwhelming weight and preponderance as to be clearly wrong or manifestly unjust.

Having failed on his factual sufficiency arguments, it is self-evident that Reviea also fails on his legal sufficiency arguments, namely, that Marine Drilling's negligence and the vessel's unseaworthiness were established "as a matter of law." Points one and two are overruled.

■ By his third point of error, Reviea argues that the trial court erred both in failing to strike the entire jury panel when a venireman commented about excessive insurance rates and in failing to grant a new trial on this same ground. The relevant portion of the voir dire examination follows:

2. The court instructed the jury that "unseaworthiness" refers to "a vessel owner's non-delegable responsibility to provide a drilling vessel that is reasonably safe, suitable and fit for the purpose for which it is provided or intended."

Defense: All right, sir. Anything about that experience [pumping oil and gas wells] that would lead you to think you might be impartial [sic] or biased in a case like this?

Juror: Well, I think everybody has to watch out for their own safety, especially nowadays, since insurance is outrageous because of safety requirements and—

Defense: All right, sir.

Juror: Feel like everybody is probably trying to do the best they can to save money—

Defense: All right.

Juror: —on insurance because of accidents, it jacks their rates up.

Defense: All right, sir. Thank you.

Plaintiff's Counsel: I'd like to approach the bench.

The purpose of voir dire is to seat a fair and impartial jury. *Babcock v. Northwest Memorial Hospital,* 767 S.W.2d 705, 709 (Tex.1989). Historically, Texas courts have held that it is improper for a jury to be informed of whether or not a party is protected by insurance. *See* Godfrey, *Civil Voir Dire in Texas: Winning the Appeal Based on Bias or Prejudice,* 31 S.Tex.L.J. 409, 416–20 (1990) [hereinafter *Voir Dire* ]. However, not every mention of insurance requires the setting aside of a jury's verdict. *St. Louis S.W. Ry. v. Gregory,* 387 S.W.2d 27, 33 (Tex.1965); *see also Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962).

Crucial to our analysis is our recognition that this is *not a* situation where *counsel* has elicited information about insurance or has commented during voir dire about insurance. In some cases, harm has been presumed when counsel asked questions regarding the insurance industry or insurance rates. *See, e.g., Hemmenway v. Skibo,* 498 S.W.2d 9 (Tex.Civ.App.—Beaumont 1973, *writ ref'd n.r.e.*); *A.J. Miller Trucking Co. v. Wood,* 474 S.W.2d 763, 764 (Tex. Civ.App.—Tyler 1971, *writ ref'd n.r.e.*); *Johnson v. Reed,* 464 S.W.2d 689 (Tex.Civ. App.—Dallas 1971, *writ ref'd n.r.e.*), *cert. denied,* 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256 (1972); *see generally Voir Dire* at 417–18. On the contrary, in the present case, the improper comments about

insurance rates were spontaneously made by a prospective juror.

In *Dennis v. Hulse,* 362 S.W.2d 308 (Tex. 1965), the Court held that a party complaining of a witness' testimony, referring to a party's insurance coverage, must show that the trial court's failure to grant a mistrial probably caused the rendition of an improper judgment. Because the complaining party failed to furnish a complete statement of facts, the Court refused to presume that harmful error occurred. *See Dennis,* 387 S.W.2d at 309–10. Even though *Dennis* involved a witness' testimony, rather than an attorney's voir dire statement or question, it's harmless error analysis has been followed when the topic of insurance is raised by counsel during voir dire. *See, e.g., Shoppers World v. Villarreal,* 518 S.W.2d 913, 920–21 (Tex. Civ.App.—Corpus Christi 1975, *writ ref'd n.r.e.*); *Meyers v. Searcy,* 488 S.W.2d 509, 514–15 (Tex.Civ.App.—San Antonio 1972, *no writ*); *South Austin Drive–In Theatre v. Thomison,* 421 S.W.2d 933, 941 (Tex.Civ. App.—Austin 1967, *writ ref'd n.r.e.*). Because the statements complained of in the present case were neither made nor elicited by counsel, we find the Court's reasoning in *Dennis* controlling. If harm is not presumed when a witness testifies about insurance, then it logically should not be presumed when statements are spontaneously made by a prospective juror.

▆ We find Reviea's complaint unpersuasive for two reasons. First, from the comments made, the jury was not in fact advised of whether or not Marine Drilling was covered by insurance. Second, even if the statements were interpreted by the other venirepersons to mean that a verdict for the plaintiff would "jack up" insurance rates, it is hardly probable that the jury, for that reason, would render a verdict favorable to Marine Drilling. *See Gregory,* 387 S.W.2d at 33. Reviea has failed to show that any alleged error of the trial court probably caused the rendition of an improper judgment. *See* Tex.R.App.P. 81(b)(1). Point three is overruled.

A brief recitation of the evidence presented at trial is necessary to put Re-

viea's next points in context. Marine Drilling presented the testimony of three eyewitnesses to Reviea's fall: William Henderson, R.D. Lee, and Frankie Wilbourn. Henderson and Wilbourn testified at trial that Reviea did not slip off of the rotary table. They stated that when Reviea stepped back off of the rotary table, his knee gave way, and he fell. Reviea also introduced Wilbourn's prior statement given to Bill Luther, a Marine Drilling claims investigator, in which Wilbourn denied witnessing the fall. Lee testified that he saw Reviea fall but did not see how he fell or whether he had slipped.

Prior to trial, Reviea's statements about his knee and the cause of his injury were, at best, inconsistent. Lee testified that on the day of the fall, Reviea told him that "he slipped and hurt his knee or fell or whatever." The day after the fall, Reviea likewise told a co-worker that he had hurt his knee when he slipped on the rotary table. Conversely, Reviea's medical record reflects, "was standing, states left leg gave out and twisted knee to one side, some swelling noted, and complains of pain." Wilbourn testified that Reviea told him that "he [Reviea] messed his knee up when he was playing football before [the fall]." Finally, Ricky Minard, a co-worker, testified that Reviea had complained to him before the fall, that his knee "bothered him, you know, it had been swollen on him." Minard also testified that, several times prior to the fall, Reviea had his knee wrapped with a bandage and that approximately one week prior to the fall, Reviea's knee was swollen.

Reviea contends, by point four, that the trial court erred in admitting the testimony of Luther, the Marine Drilling claims investigator. Luther testified that Wilbourn, in a recorded statement, told him that Reviea had complained of a prior knee injury. Because Luther's testimony technically constitutes double hearsay, we will discuss Reviea's statement to Wilbourn, first. *See* Tex.R.Civ.Evid. 805.

 Tex.R.Civ.Evid. 801(e)(2) provides, in relevant part, "[a] statement is not hearsay if the statement is offered against a party and is his own statement." Thus, Reviea's statement, as related by Wilbourn, is not hearsay. It is an admission of Reviea, a party opponent.

The next question involves the classification of Luther's testimony relating Wilbourn's statement. Ordinarily, Luther's statements regarding what Wilbourn had told him would be hearsay and inadmissible. However, as previously discussed, Reviea elicited from Luther another portion of Wilbourn's recorded statement (Wilbourn stating that he did not witness the fall), seeking to impeach Wilbourn's testimony given earlier during the trial. Tex.R.Civ. Evid. 801(e)(1)(B) provides, in relevant part, "[a] statement is not hearsay if the declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

 Wilbourn testified at trial and was subject to cross-examination concerning his statement about Reviea's prior knee injury. Thus, his statement to Luther was consistent with his trial testimony regarding Reviea's prior knee injury. We find that the prior consistent statement of Wilbourn concerning Reviea's admission of a prior injury was not hearsay, as it was offered to rebut Reviea's implied charge of recent fabrication. *See generally Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298 (Tex.1962). Point four is overruled.

Reviea's fifth point of error is twofold. First, he contends that the trial court erred by excluding evidence of Wilbourn's prior burglary conviction. Second, he argues that the trial court should have granted a new trial when Reviea discovered that Wilbourn had a prior murder conviction. We discuss Reviea's second complaint first.

A complaint of newly discovered evidence must be asserted through a motion for new trial. Tex.R.Civ.P. 324(b)(1). The motion for new trial must be filed prior to or within thirty days after the judgment is signed. Tex.R.Civ.P. 329b(a). The final judgment was signed on June 6, 1989. On

July 6, 1989, Reviea filed a motion for new trial. It was denied on August 11, 1989. The motion did not assert his "newly discovered evidence" argument. On August 28, 1989, Reviea filed a motion for leave to file a supplemental motion for new trial. It was denied. The motion to supplement, filed 83 days after the judgment was signed and 17 days after his motion for new trial was overruled, asserted his new evidence argument.

> One or more amended motions for new trial may be filed without leave of court *before* any preceding motion for new trial filed by the movant is overruled *and within thirty days* after the judgment or other order complained of is signed.

Tex.R.Civ.P. 329b(b) (emphasis ours). Because the motion for new trial had been overruled and the thirty days had expired, it is clear that Reviea could not file a supplemental motion without leave of court. The narrow issue presented is whether the trial court, exercising its plenary powers, abused its discretion by not granting leave to file the supplemental motion. We find no abuse.

■ It is well established that an amended motion for new trial must be filed within thirty days after the judgment is signed, or the motion is a nullity and may not be considered. *Voth v. Felderhoff,* 768 S.W.2d 403, 412 (Tex.App.—Fort Worth 1989, *writ denied*); *see also Baker v. Walmart Stores, Inc.,* 727 S.W.2d 53, 55 (Tex. App.—Beaumont 1987, *no writ*); *Lind v. Gresham,* 672 S.W.2d 20, 22 (Tex.App.— Houston [14th Dist.] 1984, *no writ*). This rule applies to supplemental motions for new trial. *Voth,* 768 S.W.2d at 412. Thus, the trial court did not err in denying Reviea's motion for leave to file the document.

Furthermore, it is incumbent upon the party seeking a new trial on the ground of newly discovered evidence to show, among other things, that the new evidence could not have been discovered earlier by exercising due diligence and that it is so material that it would probably produce a different result if a new trial were ordered. *Jack-*

*son v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983). Reviea fails on both accounts.

■ Next, Reviea contends that the trial court abused its discretion by not admitting evidence of Wilbourn's prior burglary conviction. Wilbourn was released from his incarceration in 1969, almost twenty years prior to trial.

> Evidence of a conviction ... is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction ... unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Tex.R.Civ.Evid. 609(b). It is a matter within the sound discretion of the trial court to determine whether a remote conviction should be admitted. In the absence of any evidence of the specific facts and circumstances of Wilbourn's conviction, this Court will not substitute its judgment for that of the trial court. Point five is overruled in its entirety.

■ By his sixth and final point of error and citing no authority, Reviea complains of the following jury argument:

> And I swear upon my dear mother's grave there is nobody that I would put on that stand like that and tell him [sic] anything but the truth ... I think my eight-year-old daughter understands a difference between slip and fall and step back ... I think my eight-year-old daughter understands the difference between two to three inches and six to eight inches [referring to Reviea's testimony that the rotary table was six to eight inches above the drilling floor].

To complain of improper jury argument, a party must show that the argument was (1) error, (2) not invited or provoked, (3) preserved by a proper objection, motion to instruct, or motion for mistrial, and (4) not curable by instruction, prompt withdrawal or reprimand by the trial judge. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979). Reviea did not object, request

an instruction or move for a mistrial. He has wholly failed to preserve this complaint through the use of a proper trial predicate. Point six is overruled.

Parenthetically, we note that because the jury answered the negligence and unseaworthiness questions against Reviea, the jury did not reach the causation questions ("proximate cause" under the unseaworthiness claim and "legal cause" under the Jones Act claim). Thus, Reviea vigorously argues that whether he injured his knee by slipping off the rotary table or by stepping down and having his knee collapse from developmental instability has no relevance to this appeal. We agree. Precisely for this reason, Reviea cannot show any harm by its fourth, fifth, and sixth points of error because those alleged errors affected testimony and argument solely concerning the causation questions, the questions that the jury never answered.

The judgment of the trial court is AFFIRMED.

SEERDEN, J., filed a concurring opinion.

SEERDEN, Justice, concurring.

I agree with the majority's disposition of this case but write separately to further explain my reasons for overruling point of error number three. After the prospective juror mentioned insurance, appellant's counsel asked to approach the bench and the following discussion transpired:

Mr. Hardy: In questioning the panel member, Mr. Waters [attorney for appellee] permitted this juror to go on and on about accidents raising insurance rates, so forth. I move that it's poisoned this entire panel and I'd like to make a motion on the record.

. . . . .

The Court: Sure.

Mr. Hardy: Comes now plaintiff, in the above entitled cause, in questioning juror number twenty, the fact that this juror believes that every man should watch out for himself, that insurance rates are so high as a result of these injuries, that people have the responsibility to watch out for themselves, he's injected insurance in the case, and the fact that insurance rates are prohibited—high at this point in time because of such injuries, we believe has poisoned this entire panel. The Court: All right. I'll deny your motion.

The manner of conducting jury voir dire examination is largely within the trial court's discretion. *Johnson v. Reed,* 464 S.W.2d 689, 691 (Tex.Civ.App.—Dallas 1971, *writ ref'd n.r.e.*), *cert. denied,* 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256 (1972). Only where the record demonstrates a clear abuse of this discretion will the power of the trial court be disturbed on appeal. *See id.* Taking into consideration the matters contained in the majority opinion as well as the content of appellant's motion, I would hold that the trial court did not abuse its discretion in refusing to quash the jury panel.